*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0069p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

OCEANUS PERRY,

*Defendant-Appellant.*

No. 04-4506

>

_____

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 02-00159—Edmund A. Sargus, Jr., District Judge.

Submitted: January 4, 2006

Decided and Filed: February 24, 2006

Before: SUHRHEINRICH and GRIFFIN, Circuit Judges; HOOD, Chief District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Keith A. Yeazel, Columbus, Ohio, for Appellant. Robyn Jones Hahnert, ASSISTANT
UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge. Defendant Oceanus Perry appeals his convictions and sentences for armed
bank robbery, 18 U.S.C. §§ 2113(a)&(d), and use of a firearm during a crime of violence, 18 U.S.C.
§ 924(c). We affirm Perry's convictions, and his sentence for use of a firearm, but remand for resentencing
on his conviction for armed bank robbery.

I.

At approximately 2:40 p.m. on December 4, 2001, defendant Oceanus Perry entered a National City
Bank ("NCB") branch in Columbus, Ohio. Carrying a black and tan "JanSport" type bookbag over his
shoulder, Perry wore a black leather overcoat and a baseball cap. Perry approached Megan Bollmeyer, a
bank teller. As Perry set his bag on the counter, Bollmeyer heard a "clanking sound." Perry then retrieved

_____

[*]The Honorable Joseph M. Hood, Chief United States District Judge for the Eastern District of Kentucky, sitting by
designation.

two $50 bills and, after receiving his requested change for each bill, he remained at the counter for several minutes counting his money before leaving.

Perry re-entered the bank minutes later, approached NCB Teller Nikkili Smith and, after placing his bookbag on the counter, he asked to purchase three money orders. After Smith completed the money orders and handed them to Perry, he reached into his bookbag and pulled out a black semi-automatic firearm. Pointing the weapon at various bank employees, Perry demanded all of the money in teller drawers and instructed Smith not to include any dye packs or bait money. Two bank tellers gathered money from their drawers and, at Perry's direction, placed the money into his backpack without including bait money or dye packs.

Perry then fled the scene, and the police were called. An investigation of the crime scene enabled authorities to obtain copies of the money orders sold to Perry and bank surveillance photographs. A subsequent audit revealed that $6,058 was missing from Smith's and Bollmeyer's teller drawers.

Weeks later, at approximately 9:37 a.m. on January 26, 2002, Perry entered a Liberty, Ohio, branch of Metropolitan Bank carrying a black shoulder bookbag and wearing a dark jacket, baseball hat, and glasses. He approached a counter and sought change for a $50 bill. Upon receiving his change, Perry stood in the lobby for roughly four minutes counting his change and looking at brochures. As he left the bank, Perry attempted to use a Metropolitan Bank ATM machine in the parking lot but, after experiencing some difficulty, he re-entered the bank and sought help. Metropolitan Bank teller Kara Morgan informed Perry that his ATM card belonged to the 717 Credit Union, and, as a result, she could not tell if funds were available for withdrawal. Although Perry then departed the bank, surveillance cameras captured his subsequent ATM transaction at the Metropolitan Bank parking lot machine.

Roughly ten minutes later, on that same morning, Perry entered Bank One wearing a baseball cap, black leather jacket, and carrying a black leather shoulder bag. He approached Bank One teller Christina Will, placed his bag on the counter, and asked to purchase money orders. Upon learning that Bank One did not sell money orders, Perry produced a $50 bill and asked for change. As Will complied with his request, Perry reached into his bag, retrieved a black semi-automatic firearm, pointed it at Will, and demanded all of her money. After Will provided Perry with the money, Perry put the money into his bag, along with the gun, and fled from the bank.[1] Unbeknownst to Perry, however, Will also gave him a dye pack. Again, bank surveillance photos captured the robbery.

After watching a local news story about the Bank One robbery, Metropolitan Bank Teller Morgan informed the appropriate authorities that she recognized Perry as the individual who had entered her bank ten minutes before the Bank One robbery. FBI agents then reviewed the Metropolitan Bank ATM journal tape, which reflected a transaction at 9:46 a.m. on the day of the robbery withdrawing money from an account in the name of Perry's mother. FBI agents thereafter obtained a Department of Motor Vehicles photograph of Perry and composed a photographic lineup containing Perry's picture, which they showed to Morgan, who identified Perry.

Agents then discovered that Perry was living in Columbus, Ohio, while attending Ohio State University. On February 8, 2002, agents arrested Perry at the apartment he shared with his girlfriend. In doing so, agents discovered that Perry was carrying an empty gun holster and a 717 Credit Union ATM card in his wallet, which had the same number as the card used at Metropolitan Bank on the day of the robbery.

---

[1] This second robbery took place in the Northern District of Ohio. For his role in this offense, Perry was separately tried and convicted in the Northern District of Ohio for armed bank robbery and using a firearm in a crime of violence. Following his conviction for committing the Bank One robbery, Perry was sentenced to serve forty-one months incarceration on Count I (violation of 18 U.S.C. §§ 2113(a) & (d)) and eighty-four months on Count II (using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)). Perry was then transferred to the Southern District of Ohio on December 16, 2003.

A consent search of the apartment uncovered a black .45 caliber firearm, which matched the description of the firearm used in both robberies and possessed red dye stain and tear gas residue. A subsequent search of Perry's vehicle revealed a black backpack with a tan bottom matching the description of the bag used in the NCB robbery. Agents also found mail addressed to Perry at his address in Columbus and at his mother's residence in Hubbard, Ohio.

Upon hearing the details of the Bank One robbery, FBI Special Agent Harry W. Trombitas, bank robbery coordinator for the FBI's Columbus, Ohio, office, suspected a connection between that robbery and the December 4, 2001, NCB robbery. Agent Trombitas showed his photo array to three NCB employees on duty at the time of the robbery. Of those employees, only Bollmeyer identified Perry's photograph from the lineup as the individual who robbed NCB. Agent Trombitas also showed surveillance photographs from the NCB robbery to several of Perry's acquaintances; namely, his girlfriend Monique Bland, his former employer Willie Young, and his friend Shawn Graham. Although neither Bland, nor Graham, recognized Perry, Young identified Perry as the individual shown in the surveillance photographs.

Based on the totality of the foregoing information, a grand jury returned a two-count indictment against Perry on October 8, 2002, charging him with the armed robbery of National City Bank and brandishing a firearm during a crime of violence. Following his arraignment on January 9, 2004, *see* note 1, *supra*, Perry filed a motion in limine seeking to prohibit the government from introducing evidence related to his conviction for the Bank One robbery. After hearing testimony and reviewing surveillance photographs from both robberies, the district court held that evidence of the Bank One robbery was admissible on the issue of the robber's identity.

In particular, the court observed that "identity is the largest single issue in this case" and, as such, "[e]stablishing identity is a proper grounds [sic] for the admission of other act evidence under Rule 404(b)." The court alternatively concluded that evidence of the Bank One robbery was admissible to show a modus operandi. Finally, the court concluded that the value of the evidence outweighed any prejudicial impact of its admission. The court did, however, give limiting instructions concerning the purpose for this evidence at several points during trial: (1) prior to the testimony of the first Bank One witness, (2) following the testimony of the second Bank One witness, (3) before the first Metropolitan Bank witness, and (4) during the final jury charge.

Following the court's final instructions, the jury retired to deliberate. During their deliberations, the jury sent a written note to the court querying as follows: "[y]our Honor, within the bookbag there are papers that are open. May we look at these and consider them?" In response, the court ordered the courtroom deputy to retrieve the exhibit and thereafter sought counsel's advice on how to proceed. Defense counsel proposed that the court advise the jury "that there were some papers that were inadvertently left within the book bag, that those papers were not identified at any point in the trial, nor were they ever admitted as evidence, and therefore they are inappropriate for the jury to consider . . . ." The court agreed with defense counsel, instructed the jury accordingly, and the jury thereafter returned a guilty verdict.

Perry was sentenced on October 21, 2004. At that hearing, the court sentenced Perry to sixty-three months imprisonment for Count I (armed bank robbery), only twenty-two months of which would run consecutively to his sentence for committing the Bank One robbery. Perry also received an additional twenty-five years imprisonment on Count II (use of a firearm during a crime of violence), which would run consecutively to his Count I sentence, as well as consecutively to the sentence imposed following the Bank One robbery. The court further imposed a term of supervised release, a $200 special assessment, and $6,058 in restitution to NCB.

This timely appeal followed.

II.

We review the district court's admission or exclusion of evidence for an abuse of discretion. *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001). In the specific context of Rule 404(b), we employ a three-part test: (1) we first review for clear error a district court's determination that the "other act" took place, (2) we then conduct a de novo review of the district court's legal determination that the evidence was admissible for a proper purpose, and (3) we review "for abuse of discretion the district court's determination that the probative value of the other acts evidence is not substantially outweighed by its unfairly prejudicial effect." *United States v. Merriweather*, 78 F.3d 1070, 1074 (6th Cir. 1996) (citations omitted).[2]

Perry first contends that the district court abused its discretion by admitting evidence of the subsequent Bank One robbery pursuant to Rule 404(b). Perry asserts that because the robberies occurred over a month apart and over one hundred miles away from one another, the crimes were too remote in time and space to merit admission of evidence related to the Bank One robbery. Perry further argues that requesting change for a $50 bill, coupled with the purchase of money orders, is not a sufficiently unique set of facts to constitute "some sort of behavioral fingerprint." Moreover, the evidence was unduly prejudicial in violation of FED. R. EVID. 403. For these reasons, Perry concludes, the district court abused its discretion by admitting evidence of the subsequent Bank One robbery. We disagree.

As a fundamental premise, FED. R. EVID. 404(b) prohibits the introduction of evidence of other crimes or wrongs or acts "to prove the character of a person in order to show action in conformity therewith." At the outset, Perry concedes the first *Mack* inquiry; namely, he admits that Bank One was robbed. The question therefore becomes whether the district court admitted evidence of the subsequent Bank One robbery for a proper purpose. Rule 404(b) expressly allows for the admission of "other act" evidence when offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Significantly, the list provided by 404(b) is not exhaustive. *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000).

In this case, the district court expressly recognized that "identity is the largest single issue in this case, that is, the identity of the perpetrator of the robbery of the National City Bank[.]" In such a case, when the issue is one related solely to identity, this Court has overwhelmingly approved of the admission of "other acts" evidence. *E.g., United States v. Fountain*, 2 F.3d 656, 668 (6th Cir. 1993).

The district court also observed that the circumstances surrounding the NCB and Bank One robberies, alongside Perry's conduct at the Metropolitan Bank, were unique and therefore created a "signature." Such a determination was appropriate; unlike two completely unrelated robberies, Perry entered both NCB and Bank One carrying a gun in a bookbag and seeking change for $50. *Cf. United States v. Phillips*, 599 F.2d 134, 137 (6th Cir. 1979). Upon receiving his change, Perry sought to purchase money orders and only after doing so did he remove his gun. Although Perry points to certain distinctions between the two robberies, "[i]t is not necessary . . . that the crimes be identical in every detail." *United States v. Hamilton*, 684 F.2d 380, 385 (6th Cir. 1982). Thus, given that two crimes of sufficient distinctive similarity can create a pattern or modus operandi, *see United States v. Woods*, 613 F.2d 629, 635 (6th Cir. 1980), the district court admitted evidence of the Bank One robbery for a proper purpose, *accord Hamilton*, 684 F.2d at 384-85.

The inquiry then turns to determining whether the district court properly balanced the prejudicial impact and probative value pursuant to FED. R. EVID. 403. In doing so, we "look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Zipkin*, 729 F.2d 384, 389 (6th Cir. 1984). Significantly, although a district court should exclude evidence pursuant to Rule 403 "only where the probative value of the relevant evidence is

---

[2]Notably, acts prior to and subsequent to the offense charged are admissible pursuant to Rule 404(b). *United States v. Pollard*, 778 F.2d 1177, 1179-80 (6th Cir. 1985).

*substantially* outweighed by the danger of unfair prejudice[,]" *United States v. Hans*, 684 F.2d 343, 346 (6th Cir. 1982) (citations omitted), the court should nonetheless issue a limiting instruction establishing the basis for the inclusion of the Rule 404(b) evidence, *United States v. Ward*, 190 F.3d 483, 489-90 (6th Cir. 1999).

In this case, evidence of Perry's participation in the subsequent Bank One robbery was not sufficiently prejudicial to render it inadmissible. Prior to the admission of the Bank One evidence, the district court gave the jury an appropriate limiting instruction, which it repeated several other times throughout the trial. *See United States v. Holloway*, 740 F.2d 1373, 1377 (6th Cir. 1984). As a result, the district court did not abuse its discretion when admitting evidence of the subsequent bank robbery on the limited issue of Perry's identity.

### III.

Perry next contends that it was plain error for the district court to admit identification testimony from Perry's girlfriend Monique Bland, his former employer Willie Young, and his friend Shawn Graham. Specifically, Perry argues that requesting the opinion of three non-eyewitnesses about the identity of the person depicted in bank surveillance photographs contradicts FED. R. EVID. 403 because "the jury was in a superior vantage point to decide whether or not the photos depicted him." Thus, Perry concludes, "[a]dmission of the opinions regarding identification was a waste of time and affected Appellant's rights."

Because Perry failed to object to the identification testimony elicited from Monique Bland, Willie Young, and Shawn Graham, this Court reviews the admission of that lay testimony solely for plain error. FED. R. CRIM. P. 52(b); *see United States v. Krimsky*, 230 F.3d 855, 858 (6th Cir. 2000). Rule 701 of the Federal Rules of Evidence provides that, "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue . . . ."

A review of the record reveals that a majority of the testimony Perry now complains about actually aided his defense. For example, Bland testified that, although Perry could have been the individual depicted in the surveillance photo, she had never seen Perry wear clothes similar to those worn by the person in the picture. Graham stated outright that he could not identify the individual depicted in the NCB surveillance photo. Perry's trial counsel was wise not to object to testimony tending to discredit the prosecution's theory.

Moreover, the trial testimony confirms that the photograph, by itself, could not identify Perry as the NCB robber.[3] The witness identification testimony therefore aided the jury in determining whether Perry was, in fact, the individual depicted in the NCB surveillance photograph. The weight to be given to that testimony is for the jury to determine. *See United States v. Maddox*, 944 F.2d 1223, 1231 (6th Cir. 1991); *United States v. Black*, 412 F.2d 687, 689 (6th Cir. 1969). Accordingly, the district court did not plainly err in allowing Bland, Graham, and Young to testify about whether the individual depicted in the NCB surveillance photo resembled Perry. *See United States v. Monsour*, 893 F.2d 126, 128-29 (6th Cir. 1990).

### IV.

Next, Perry argues that the district court abused its discretion by admitting the testimony of FBI Agent Trombitas who testified about the unique circumstances surrounding both the Bank One and NCB robberies. Perry contends the government improperly failed to provide him with a summary of Agent

---

[3]When ruling on the "other acts" issue, the district court noted in passing that "a reasonable factfinder could conclude simply on the basis of that photographic evidence that this is the same individual who appeared in all three banks." Perry asserts that such a statement highlights the court's error. As the government notes, however, this statement is not the equivalent of concluding that the photograph *itself* reveals the identity of the robber.

Trombitas's testimony in violation of FED. R. CRIM. P. 16(a)(1)(G). He also asserts that the district court erred in allowing Agent Trombitas to testify about the Bank One robbery because doing so (1) allowed the improper admission of "other acts" evidence, (2) was unduly prejudicial pursuant to FED. R. EVID. 403, and (3) the Agent's testimony was unnecessarily cumulative in light of the bank surveillance photographs. Thus, Perry concludes that the court abused its discretion by allowing Agent Trombitas to testify.

Perry's arguments lack merit. Although the government concedes that Perry was not provided a summary of Agent Trombitas's testimony, no such summary was required. Federal Rule of Criminal Procedure 16(a)(1)(G) provides, in pertinent part, that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." In this case, however, the government did not offer Agent Trombitas as an expert, nor did Perry's trial counsel otherwise challenge Agent Trombitas's qualifications. Thus, Rule 16 does not apply, and, as a result, the government was not obligated to provide Perry with a written summary of Agent Trombitas's testimony.

The balance of Perry's arguments are more properly directed to attacking the district court's ruling with regard to the admission of evidence related to the Bank One robbery. That issue was fully addressed above, and, accordingly, the district court committed no error in allowing Agent Trombitas to testify.

V.

Perry next argues that the district court improperly instructed the jury on the government's burden of proof. Specifically, Perry argues "[b]ecause the district court required only 'an abiding conviction to a moral certainty' it impermissibly lessened the government's burden of proof to establish Appellant's guilt beyond a reasonable doubt." As a result, Perry asserts, the instruction runs afoul of the Supreme Court's decision in *Cage v. Louisiana*, 498 U.S. 39 (1990).

Perry's reliance on *Cage* is misplaced. In *Cage*, the Supreme Court held that the instruction at issue violated the Constitution because a reasonable juror "could have" interpreted the instruction at issue to permit a finding of guilt without proof of guilt beyond a reasonable doubt. 498 U.S. at 41. Since then, however, in *Estelle v. McGuire*, 502 U.S. 62 (1991), the Supreme Court clarified that the proper inquiry is not whether the instruction "could have" been unconstitutionally interpreted, but whether there is a reasonable likelihood that the jury did so interpret it, *id.* at 72 n.4. The Court later noted that "we have said that 'proof to a "moral certainty" is an equivalent phrase with "beyond a reasonable doubt."'" *Victor v. Nebraska*, 511 U.S. 1, 12 (1994) (quoting *Fidelity Mut. Life Ass'n v. Mettler*, 185 U.S. 308, 317 (1902)); *accord Tyler v. Cain*, 533 U.S. 656, 658 n.1 (2001).

In this case, the court instructed the jury in pertinent part as follows: "A reasonable doubt exists when, after the careful, entire, and impartial consideration of all of the evidence in the case, the jurors do not feel an abiding conviction to a moral certainty that a defendant is guilty of the offense charged." In light of the foregoing authority, we have previously stated that references to "a moral certainty" and an "abiding conviction" do not mislead a reasonable jury. *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997) (applying *Victor* and reiterating "that the 'abiding conviction' language, when used in conjunction with 'moral certainty,' properly stated the government's burden of proof"). The jury instruction did not deny to Perry his due process rights.

VI.

Perry next attacks the court's handling of the jury's note inquiring into whether they could review the contents of his bookbag. Perry specifically asserts that it was plain error for the court not to hold a hearing sua sponte to determine the impact of the note on the jury and whether or not it prejudiced the deliberations. Perry therefore seeks a remand for a new trial.

Because Perry failed to object to the district court's handling of the jury note, we review the court's decision not to hold an evidentiary hearing for plain error.  FED. R. CRIM. P. 52(b).  The Sixth Amendment right to trial by jury "ensure[s] criminal defendants a fair trial by a panel of impartial, indifferent jurors." *United States v. Davis*, 177 F.3d 552, 556-57 (6th Cir. 1999) (internal citation and quotation marks omitted). To guard this right, the Court in *Remmer v. United States*, 347 U.S. 227 (1954), held that any "private communication, contact or tampering directly or indirectly with a juror during a trial about the matter pending before the jury is, for obvious reasons, presumptively prejudicial . . . [,]" *id*. at 229.  Accordingly, "when possible juror misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the constitutional guarantee." *Davis*, 177 F.3d at 556 (internal quotation marks and brackets omitted).  At a *Remmer* hearing, the defendant must prove actual juror bias, "and no presumption of prejudice arises merely from the fact that improper contact occurred." *Id*. at 557 (citing *United States v. Zelinka*, 862 F.2d 92, 96 (6th Cir. 1988)).

In this case, however, Perry complains that the district court failed to conduct a *Remmer* hearing sua sponte to inquire into potential jury bias.  Perry waived his right to such a hearing when he specifically agreed to have the court instruct the jury. *See United States v. Olano*, 507 U.S. 725, 733 (1993).  Not only did Perry not object to allowing the court to simply instruct the jury, but Perry *proposed* the language comprising the court's instruction to the jury.  "An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course." *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990).  Perry therefore waived any objection he might have had to the court's instruction to the jury regarding the method to deal with the unadmitted materials the jury inadvertently discovered in Perry's bookbag.

VII.

Perry next charges that it was plain error, in violation of the Sixth Amendment, for the district court to sentence him to the twenty-five year consecutive sentence pursuant to 18 U.S.C. § 924(c).  Perry argues that his sentence of twenty-five years on count two must be vacated because he was only indicted by the grand jury for violations of 18 U.S.C. § 924(c)(1)(A)(ii), which carries a term of seven years imprisonment, and not under 18 U.S.C. § 924(c)(1)(C)(1), which states that for a second or subsequent conviction, a defendant shall be sentenced to a twenty-five-year term of imprisonment.  Perry concludes that the indictment's failure to include an essential element – namely his second conviction pursuant to § 924(c) – "means that [Perry] had no notice that he could be convicted of violating 18 U.S.C. § 924(c)(1)(C)."

Although, ordinarily, we review the sufficiency of an indictment de novo, *United States v. DeZarn*, 157 F.3d 1042, 1046 (6th Cir. 1998), an indictment challenged for the first time on appeal, as in this case, "must be construed liberally in favor of its sufficiency[,]" *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999).  "Furthermore, unless the defendant can show prejudice, a conviction will not be reversed where the indictment is challenged only after conviction unless the indictment cannot within reason be construed to charge a crime." *United States v. Hart*, 640 F.2d 856, 857-58 (6th Cir. 1981).

We have previously rejected arguments similar to Perry's instant challenge.  In *United States v. Davis*, 306 F.3d 398 (6th Cir. 2002), the district court sentenced defendant to seven years for the first conviction (count two of defendant's indictment), and, pursuant to § 924(c)(1)(C)(I), the court sentenced defendant to twenty-five years for the second conviction (count four of the indictment), *id*. at 411. Although, on appeal, defendant argued that his twenty-five year sentence on count four must be vacated because he was indicted by the grand jury only for violations of 18 U.S.C. § 924(c)(1)(A)(ii), we disagreed and affirmed. *Id*. at 411-12.  In doing so, we relied on the holding of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to conclude that the presence of a prior conviction enabled the district court to increase defendant's sentence to twenty-five years, and § 924(c)(1)(C)(I) did not need to be pleaded in the indictment. *Davis*, 306 F.3d at 411-12.

Applying *Davis* and its progeny, Perry was properly sentenced to the twenty-five year minimum sentence pursuant to § 924(c)(1)(C)(I). Although, at the time the indictment was returned in this case, Perry had not yet been convicted for committing the Bank One robbery, he was thereafter convicted for his role in the Bank One robbery *before* the district court sentenced him for committing the NCB robbery. *Cf. United States v. Langan*, 263 F.3d 613, 627 (6th Cir. 2001). Accordingly, at the time he was sentenced in this case, Perry possessed a "prior conviction" for purposes of § 924(c)(1)(C)(I). *See Deal v. United States*, 508 U.S. 129, 132-33 (1993). The indictment in this case therefore provided defendant with adequate notice of the crimes for which he was charged and was not constitutionally defective.

## VIII.

Finally, Perry challenges his sentence pursuant to *United States v. Booker*, 125 S. Ct. 738 (2005). Perry was sentenced on October 21, 2004, before the Supreme Court decided *Booker*, which held that the United States Sentencing Guidelines are henceforth to be considered advisory, rather than mandatory. *Id.* at 757. The *Booker* Court further stated that its holding was to be applied to all cases pending on direct review. *Id.* at 769. Perry was sentenced pursuant to the Guidelines, which the district court considered mandatory, and his case is now pending on direct review. The error of sentencing Perry as if the Guidelines were mandatory is plain and prejudice is presumed. *United States v. Barnett*, 398 F.3d 516, 525-31 (6th Cir.), *cert. denied*, 126 S. Ct. 33 (2005). The government, in its footnote argument, makes no effort to rebut the presumption of prejudice. We therefore conclude that Perry must be resentenced for his armed bank robbery conviction (Count I).

In regard to his conviction for use of a firearm during a crime of violence (Count II), however, resentencing is not warranted because *Booker* does not affect a statutorily mandated sentence. *Barnett*, 398 F.3d at 525 ("[T]here is no language in *Booker* suggesting that the Supreme Court, as part of its remedial scheme adopted in that case, intended to alter the exception to *Apprendi* allowing district courts to consider the fact and nature of prior convictions without submitting those issues to the jury."); *accord United States v. Robinson*, 404 F.3d 850, 862 (4th Cir. 2005) ("*Booker* did nothing to alter the rule that judges cannot depart below a statutorily provided minimum sentence.").

## IX.

We affirm Perry's convictions, and his sentence for use of a firearm, but remand for resentencing on his conviction for armed bank robbery.