NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0399n.06

No. 07-6125

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Jun 03, 2009

LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR THE |
| BILLY FLOYD LEASURE, | ) EASTERN DISTRICT OF TENNESSEE |
| | ) |
| Defendant-Appellant. | ) |
| | ) |
| | ) |

Before: KENNEDY, GIBBONS and ROGERS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Billy Floyd Leasure appeals his jury conviction for aiding and abetting the distribution of crack cocaine and his 200-month sentence. The United States District Court for the Eastern District of Tennessee sentenced Leasure based on the career offender provision of the United States Sentencing Guidelines ("Guidelines") and granted a downward variance of 62 months. On appeal, Leasure challenges the admission of 404(b) evidence and expert witness evidence against him, the district court's use of an *Allen* charge, and the procedural and substantive reasonableness of his sentence. For the following reasons, we affirm Leasure's conviction and sentence.

## I.

On January 6, 2005, officers of the Oak Ridge, Tennessee, Police Department conducted an operation in which they instructed a confidential informant, Gary Goodman, to buy crack cocaine. Goodman arranged to buy crack cocaine from Leasure, who told Goodman he would have someone drop off the drugs at the informant's hotel room. With the police in an adjoining room monitoring the transaction, Angelo Handley came to the hotel, sold Goodman drugs, and was arrested by the police. Leasure telephoned Goodman to find out whether the drugs had been delivered; and Goodman responded, untruthfully, that no one had come. Officer Yook, who was listening to the conversation between Leasure and Goodman, testified that Leasure responded that he would bring the drugs to the hotel room himself. When Leasure had not arrived after approximately fifteen minutes, the police again instructed Goodman to call Leasure, who said that he would be there shortly. Soon after, Leasure arrived. He did not have drugs on him, but he said that he would call to arrange someone to bring crack cocaine to the hotel. He made a phone call; and after waiting a while, the police observed a black Nissan Maxima pull into the parking lot. Officer Yook testified that he witnessed Leasure approach the car and receive something from the driver. Leasure went back to the hotel room, handed Goodman drugs, and the police arrested Leasure and the two passengers of the car, Tasha Benjamin and Hobart Mitchell. The police recovered $2,201 and 7 grams of crack cocaine from Benjamin's purse, and 4 grams of crack cocaine and 0.8 grams of marijuana from Mitchell. The police found three bags of suspected cocaine on Leasure, but only 1.2 grams of the substance in one bag was confirmed to be cocaine; the other bags contained fake drugs.

2

A grand jury in the Eastern District of Tennessee indicted Leasure, along with co-defendants Benjamin and Mitchell, for 1) conspiracy to distribute and to possess with intent to distribute five grams or more of cocaine base, and 2) aiding and abetting the distribution of cocaine base. Benjamin and Mitchell were additionally charged with possession of cocaine base with intent to distribute. Leasure's two co-defendants entered guilty pleas.

Before trial, Leasure spoke on the phone with Goodman from jail. The two of them had mutual acquaintances, including Goodman's brother-in-law, who was in jail with Leasure. Goodman's brother-in-law was talking to Goodman from jail and handed the phone to Leasure. Leasure claims that he simply asked how Goodman's sick wife was doing. Goodman claims that Leasure threatened him and his son and told him not to testify in Leasure's trial. After reporting the incident to the police, Goodman was relocated to a new residence. Goodman further claims that Leasure arranged for others to harass Goodman's family and threaten them. The district court admitted this testimony at trial under Federal Rule of Evidence ("Rule") 404(b), finding that it was more probative of Leasure's guilt than prejudicial.

At trial, the government called the following individuals as witnesses: Goodman; Oak Ridge Investigators Jock Coleman and Brian Yook; Oak Ridge Officers Daniel Freytag, John Kelly, Kevin Thacker, and Mike Uher; David Holloway, an expert in the field of drug analysis; Dave Lewis, an expert witness in narcotics trafficking; and Celeste White, an expert in the field of drug analysis. Leasure also took the stand. Over Leasure's objection, Lewis testified generally as to the botanical origin of cocaine; its normal distribution path to the United States; its effect on the body; and general characteristics of drug users, drug traffickers, and drug deals. Lewis testified that the facts of this

case, including the cash found on Benjamin, the separate car driven by Benjamin and Mitchell, and the fake cocaine on Leasure, were typical of drug conspiracies.

After three hours of deliberations, the jury sent a note informing the district court that it was unable to reach a unanimous verdict. The district court, with the consent of Leasure and the government, gave the jury a supplemental charge pursuant to *Allen v. United States*, 164 U.S. 492 (1896), which was identical to the Sixth Circuit's pattern instruction *Allen* charge. At the end of the day, the foreperson stated that the jury had reached a verdict on one count. He then said that as he was walking into the courtroom, the jury had changed its mind and no longer had a verdict. The jury returned the next business day and sent a note asking the following: "If we can reach no agreement on one count, but do reach an agreement on the other, is that sufficient?" The district court responded that a verdict on any count would be sufficient. The jury convicted Leasure on count two of the indictment only, involving the January 6 transaction. At Leasure's sentencing hearing, the district court attributed 12.2 grams of cocaine to Leasure, concluding that the 7 grams of cocaine found on Benjamin, the 4 grams on Mitchell, and the 1.2 grams on Leasure were attributable to Leasure. The district court also determined that Leasure was a Career Offender within the meaning of U.S.S.G. § 4B1.1 because of his two prior drug felonies. His total offense level was 34, and his criminal history category was VI, resulting in a recommended sentence of 262 to 327 months under the Guidelines. Based in part on the fact that Leasure was found with "the smallest amount of drugs that th[e] court ha[d] ever dealt with," the district court granted a downward variance, and Leasure received a sentence of 200 months imprisonment and 6 years of supervised release. The government moved to dismiss count one of the indictment, and the district court dismissed the count without

4

prejudice. Leasure filed a motion for a new trial, which the district court denied. Leasure timely appealed to this court.

## II.

**A.     Did the district court err in admitting evidence of Leasure's threats to Goodman?**

We review the district court's admission or exclusion of evidence for an abuse of discretion. *See United States v. Perry*, 438 F.3d 642, 647 (6th Cir. 2006). Rule 404(b) prohibits the admission of "[e]vidence of other crimes, wrongs, or acts" to prove the character of the defendant but allows for its admission to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Fed. R. Evid. 404(b). This list is not exhaustive, *see United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000), and we have interpreted Rule 404(b) to allow evidence of other acts when they show "consciousness of guilt." *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986). In reviewing the admission of evidence under Rule 404(b), we perform the following three-step analysis: (1) review for clear error a district court's factual determination that the "other act" occurred; (2) review *de novo* the district court's legal determination that the evidence was admissible for a proper purpose; and (3) review for abuse of discretion the district court's determination that the probative value of the evidence is not substantially outweighed by its prejudicial effect. *Perry*, 438 F.3d at 647.

Leasure argues that the district court abused its discretion by allowing the jury to hear evidence of Leasure's threats to Goodman. First, Leasure claims that no threats were made. On its motion to admit the evidence under Rule 404(b), the government argued that Leasure threatened Goodman at least twice: 1) via telephone from the jail, which resulted in Goodman's relocation by the police, and 2) via acquaintances of Leasure who went to Goodman's former residence two weeks

before trial and tried to induce Goodman not to testify. Leasure's counsel disputed that the threats were made over the telephone but did not address the second allegation. Based on the government's proffer that it had records demonstrating that Goodman was relocated on account of the first threat and the fact that Leasure's counsel did not contest the second threat, the district court did not err in determining that the acts occurred.

As for the second prong, it is well-established that evidence of threats or intimidation is "admissible to show consciousness of guilt." *Mendez-Ortiz*, 810 F.2d at 79 (collecting cases); *United States v. Blackwell*, 459 F.3d 739, 768 (6th Cir. 2006). The district court correctly concluded that the evidence was admissible for a proper purpose.

Lastly, Leasure claims that the evidence regarding his threats was overly prejudicial. In analyzing the balance between probative and prejudicial value, we must "look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *Perry*, 438 F.3d at 648 (quoting *United States v. Zipkin*, 729 F.2d 384, 389 (6th Cir. 1984)). Leasure argues that Goodman's testimony was unreliable and did not support the government's proffer of the evidence. Leasure bases his argument on the fact that the government played a tape recording of the alleged threats made by Leasure to Goodman over the telephone, which was so muffled that the exact words in the conversation between Leasure and Goodman were unclear. Goodman's testimony, however, was consistent with the government's proffer, as was the testimony of the officer to whom Goodman reported the threats. The district court anticipated this testimony

and gave the jury a limiting instruction.[1]  *See Perry*, 438 F.3d at 649 (finding that the district court

did not err in admitting the evidence when it gave the jury an appropriate limiting instruction).  The

district court therefore did not abuse its discretion in concluding that the probative value of the

evidence of Leasure's threats to Goodman was not substantially outweighed by its prejudicial effect

and thus did not err in allowing the jury to hear the evidence.

**B.**     **Did the district court err in admitting Lewis's expert testimony?**

We review determinations of expert witnesses' relevance and unfair prejudice for an abuse

of discretion.  *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006).  An abuse of

discretion is found only when "the reviewing court is firmly convinced that a mistake has been

made."  *Id*. (citing *United States v. Williams*, 952 F.2d 1504, 1518 (6th Cir. 1991)).  "An erroneous

admission of evidence that does not affect the 'substantial rights' of a party is considered harmless,

and should be disregarded."  *United States v. Cope*, 312 F.3d 757, 775 (6th Cir. 2002).

---

[1]The limiting instruction was as follows:

You have heard testimony that the defendant committed acts other than the ones charged in the Indictment.  If you find the defendant did those acts, you may consider the evidence only as it relates to the government's claim on the defendant's consciousness of guilt.  You must not consider it for any other purpose.

Remember that the defendant is on trial here only for the offenses charged in the Indictment, not for the other acts.  Do not return a guilty verdict unless the government proves the crime charged in the Indictment beyond a reasonable doubt.

Rule 702 allows expert testimony if the expert is qualified and if his testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "Our court regularly allows qualified law enforcement personnel to testify on characteristics of criminal activity, as long as appropriate cautionary instructions are given, since knowledge of such activity is generally beyond the understanding of the average layman." *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004) (quoting *United States v. Thomas*, 99 F. App'x 665, 668-69 (6th Cir. 2004)).

Leasure claims that the district court's admission of Lewis's testimony was an abuse of discretion and had a material affect on the outcome of the trial. Leasure argues that the long narrative of Lewis's testimony on the coca plant, the process of cocaine extraction from the plant, the common course of drug trafficking, the effects of cocaine on the body, and the language of the drug culture was irrelevant and improperly admitted because Lewis was never qualified as a botanist, a chemist, a behavioral scientist, a doctor, or an anthropologist, respectively. Leasure also argues that Lewis's testimony, in particular his speculations as to the value of Leasure's crack and the amount of crack Benjamin must have sold to make $2,200 as well as Lewis's conclusion that the facts of this case represent a typical drug deal, are so misleading as to meet the test for abuse of discretion.

Lewis's opinions, however, are consistent with expert testimony regularly allowed by this court. *See Swafford*, 385 F.3d at 1030 (collecting cases); *United States v. Quinn*, 230 F.3d 862, 866 (6th Cir. 2000) (officer testified that the amount of drugs suggested distribution instead of personal use); *United States v. Dillard*, 78 F. App'x 505, 514-15 (6th Cir. 2003) (same); *United States v.*

*Jones*, 81 F. App'x 45, 48 (6th Cir. 2003) (same). Moreover, Lewis's testimony did not exceed the scope of his expertise, as his twenty years of experience as a special agent for the Drug Enforcement Administration qualifies him to discuss the different stages of the drug chain and distribution process. Under the highly deferential standard applied to determinations of admissibility, we find that the district court did not abuse its discretion in admitting Lewis's expert testimony.[2]

**C.      Did the district court abuse its discretion by allowing the jury to return a verdict after an *Allen* charge?**

The Supreme Court authorized the use of a supplemental charge more than a century ago in *Allen v. United States*. 164 U.S. at 501. In what is now known as an "*Allen* charge," district courts can charge a deadlocked jury upon their return for further instructions that:

> in a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

*Id.* We generally review a district court's decision to give a jury an *Allen* charge under the abuse of discretion standard. *United States v. Clinton*, 338 F.3d 483, 487 (6th Cir. 2003). Where there was no objection to the *Allen* charge at trial, however, we "review the defendant's claim under Rule 52(b)

---

[2]Furthermore, we note that even if parts of his testimony were not relevant, any error was harmless in light of the other overwhelming testimony indicating Leasure's guilt, *see Quinn*, 230 F.3d at 868, and the lack of verdict on the conspiracy charge.

of the Federal Rules of Criminal Procedure to determine whether there was plain error." *Id*. A defendant must show the following to establish plain error: (1) an error occurred; (2) the error was plain; (3) the error "so seriously affected the defendant's substantial rights (4) that it called into question the fairness, integrity, or public reputation of the proceedings." *Id*. Significantly, we have held that we "generally prefer the usage of the Sixth Circuit pattern jury instruction and 'its use will, in most instances, insulate a resulting verdict' from challenge on appeal." *United States v. Roach*, 502 F.3d 425, 439 (6th Cir. 2007) (quoting *Clinton*, 338 F.3d at 488).

In this case, the jury deliberated for three hours and then sent a note to the district court stating that it was unable to reach a unanimous verdict. The district court, with the consent of Leasure and the government, gave the jury an *Allen* charge that was identical to the Sixth Circuit's pattern *Allen* instruction. The jury was still unable to come to a conclusion at the end of the day, changing its mind on the verdict as the foreperson walked into the courtroom. The following Monday, the jury returned and sent a note asking the following: "If we can reach no agreement on one count, but do reach an agreement on the other, is that sufficient?" The district court said that a verdict on any count would be sufficient. Seizing on the question in the note, "is that sufficient?" Leasure argues that these facts show that the jury felt coerced into finding a verdict after receiving the *Allen* charge.

While the jury's difficulty in reaching consensus in this case is clear, Leasure has nevertheless failed to establish that a plain error occurred. First, the district court used the Sixth Circuit pattern *Allen* charge. As mentioned above, use of the Sixth Circuit pattern *Allen* charge generally "insulate[s] a resulting verdict from challenge on appeal," *Roach*, 502 F.3d at 439 (internal

10

quotation marks omitted). Second, the district court gave the *Allen* charge after three hours of deliberation. The timing of an *Allen* charge is left to the trial court's discretion, but we have stated that "the possibility of coercion is reduced if the charge is given early rather than after days of deadlocked deliberations." *United States v. Tines*, 70 F.3d 891, 896 (6th Cir. 1995); *United States v. Sawyers*, 902 F.2d 1217, 1220 (6th Cir. 1990) (rejecting a challenge that an *Allen* charge was coercive when it was given after three hours of deliberation). Furthermore, the jury never reached a verdict on count one of the indictment, showing that it did not feel coerced to convict Leasure after receiving the *Allen* charge. The district court's recitation of an *Allen* charge thus does not constitute plain error.

**D.    Has Leasure demonstrated that his sentence is unreasonable?**

We review a district court's sentencing determination for reasonableness. *Gall v. United States*, __ U.S. __, 128 S. Ct. 586, 594 (2007). A review for reasonableness includes both procedural and substantive reasonableness. *United States v. Sedore*, 512 F.3d 819, 822 (6th Cir. 2008) (citing *United States v. Liou*, 491 F.3d 334, 337 (6th Cir. 2007)). Procedural error includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 128 S. Ct. at 597. If the sentence is procedurally sound, we review the sentence for substantive reasonableness under an abuse of discretion standard. *Id*.

Leasure raises five separate challenges to the reasonableness of his sentence. We will address each in turn.

11

**1.** ***Did the district court err in applying the Guidelines as if they were mandatory in violation of Leasure's Sixth Amendment rights?***

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 128 S. Ct. at 596. After calculating the Guidelines range, the district court should hear the parties' arguments, consider the relevant 18 U.S.C. § 3553(a) factors, and determine a sentence. *Id*.

Leasure argues that the district court committed reversible procedural error by treating the Guidelines as mandatory. He argues that the district court should have "treated the guidelines as advisory and rejected the career offender guidelines." Leasure's argument fails for two reasons. First, the district court did treat the Guidelines as advisory and granted Leasure a downward variance of 62 months. *See United States v. Guest*, __ F.3d __, 2009 WL 1175172, at *3 (6th Cir. May 4, 2009) (refusing to remand when "there is no indication in the record that the district court thought its ability to vary the sentence . . . was in any way constrained"). Second, to the extent Leasure contends that the district court erred by calculating the Guidelines range at all, this argument is foreclosed by the Supreme Court's admonition that district courts are required to "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 128 S. Ct. at 596. The district court correctly calculated the Guidelines range to be 262 to 327 months and did not treat the Guidelines range as mandatory.

**2.** ***Did the district court properly consider the relevant 18 U.S.C. § 3553(a) factors?***

Leasure next claims that the district court committed reversible error by not considering the sentencing factors found in 18 U.S.C. § 3553(a). This court requires an "articulation of the reasons the district court reached the sentence ultimately imposed." *United States v. Jackson*, 408 F.3d 301,

305 (6th Cir. 2005); *see also* 18 U.S.C. § 3553(c). Leasure argues that the district court "failed to properly consider sentencing factors pursuant to 18 U.S.C. § 3553(a)." The record contradicts Leasure's argument. The district court discussed, among other considerations, the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, and policy implications. The district court considered the factors required by 18 U.S.C. § 3553(a), applied them to the individual circumstances present, and articulated its reasons for the lesser sentence it imposed. Therefore this procedural challenge is without merit.

### 3. *Did the district court use inappropriate judicial fact-finding to determine the amount of drugs attributable to Leasure?*

Leasure claims that the district court erred in attributing the drugs found on Benjamin and Mitchell to him for sentencing purposes. The jury returned a verdict convicting Leasure of aiding and abetting the distribution of cocaine base, but the verdict did not specify the amount of drugs involved. At sentencing, the district court found that 12.2 grams of cocaine were attributable to Leasure, including the 1.2 grams found on Leasure, 7 grams found on Benjamin, and 4 grams found on Mitchell. Leasure argues that the district court engaged in improper judicial fact-finding in determining the amount of drugs attributable to him.

It is well-established that district courts can make findings of fact by a preponderance of the evidence for sentencing purposes. *See United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006). Moreover, Leasure was sentenced under the career offender provision of the Guidelines, which was in no way affected by the district court's finding. *See* U.S.S.G. § 4B1.1(b). The amount of drugs attributable to Leasure did not adversely affect the selection of his sentence; to the contrary, the

13

district court found that the small amount of 1.2 grams found on Leasure was a mitigating factor weighing in favor of a downward variance.

**4.** ***Does the recent amendment of the Guidelines require resentencing?***

Leasure next argues that his sentence should be reduced pursuant to an amendment to the Guidelines for cocaine base offenses. Effective November 1, 2007, the Sentencing Commission lowered the recommended sentencing ranges for cocaine base offenses by two levels. U.S.S.G. § 2D1.1, Amendment 607 (2007). Because of this amendment, Leasure argues that he should be resentenced because he did not receive the benefit of the amended provision. The Guidelines specifically authorize a district court to reduce a sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). However, this reduction only applies if the defendant was sentenced under the provision that was amended. Because Leasure's offense level was calculated pursuant to the unchanged career offender provision, U.S.S.G. § 4B1.1(a), the amendment does not affect his sentence. *See* U.S.S.G. § 4B1.1(b) ("[I]f the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the [career offender] offense level from the table in this subsection shall apply."). If Leasure were sentenced today, he would still have a total offense level of 34 because of his prior felony drug convictions and criminal history category of VI, which would result in the identical Guidelines range of 262 to 327 months under which he was originally sentenced. Because the amendment does not affect Leasure's sentence, we deny Leasure's request for resentencing on this ground.

14

**5.** ***Does Leasure's sentence violate the Eighth Amendment?***

Finally, Leasure claims that his 200-month sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment because it is disproportionate to his crime. Because he did not raise this constitutional challenge at the sentencing hearing, we review this claim for plain error. *See United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (*en banc*).

"[T]he Eighth Amendment 'does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime." *United States v. Walls*, 546 F.3d 728, 738 (6th Cir. 2008) (alteration in original) (quoting *United States v. Layne*, 324 F.3d 464, 473 (6th Cir. 2003)). The Supreme Court has held that a mandatory life sentence for a drug violation is not a *per se* violation of the Eighth Amendment. *See Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (Kennedy, J., joined by O'Connor, J., and Souter, J., concurring). It follows that a 200-month sentence, imposed as a downward variance from the Guidelines range, also "does not give rise to an inference of gross disproportionality." *Id*.

Furthermore, although Leasure was found with only 1.2 grams on his person, he had an extensive criminal history. And, it is worth emphasizing, the district court did grant a downward variance from the Guidelines range, which itself would have been considered presumptively reasonable on appeal. *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008) ("[S]imple logic compels the conclusion that, if a sentence [within the Guidelines range] would have been presumptively reasonable in length, defendant's task of persuading us that the more lenient sentence . . . is unreasonably long is even more demanding."); *United States v. Bailey*, 264 F. App'x 480, 485 (6th Cir. 2008) ("[I]t follows from simple logic that the *below*-Guidelines sentence . . . is presumed

15

not to be unreasonably severe."). Thus Leasure's sentence is not constitutionally disproportionate to his crime.[3]

## III.

For the foregoing reasons, we affirm Leasure's conviction and sentence.

---

[3]In his appellate brief, Leasure listed two additional arguments: He challenged the sufficiency of the evidence and claimed that the district court committed reversible error by permitting a constructive amendment to the indictment. At oral argument, Leasure conceded that current case law does not support either of these arguments. We agree and will not address these two arguments.