NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0185n.06

No. 16-5224

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Mar 27, 2017 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| KHALIL DAVIS, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: KEITH, ROGERS, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Khalil Davis was convicted of robbing two gas stations in Memphis, Tennessee. He now challenges his conviction on five grounds. We reject all of his arguments and affirm.

I.

Around 4:00 a.m. on January 26, 2014, a Memphis police officer named Nathan Burford spotted two men standing next to a Chevy Avalanche on Poplar Avenue. The men flagged down Burford and told him they had run out of gas. Burford drove one of the men to a nearby Circle K, where the man borrowed a gas can from the store clerk and filled it. Burford then drove the man back to the Avalanche and resumed his patrol.

Thirty minutes later, the same man—about age 20, wearing a dark-colored hoodie, black-and-white pants, and a bandana—returned to the Circle K and robbed it. The man pulled a gun

on the store clerk, Elvia Green, and demanded that she empty the store's registers and safe. Green opened the registers, but the safe had a time lock that allowed her to withdraw only $20 every two minutes. The gunman waited long enough to collect $40; while he waited, he forced Green to perform oral sex on him. Then he left.

A half-hour later, a man who matched the description of the robber at the first store (the Circle K) robbed a second, which was part of a Marathon gas station. This time, the man was joined by another robber, who appeared to be about 30 and wore a white shirt and jeans. The older man brought an energy drink up to the counter and handed $20 to the clerk, Alain Pagui. When Pagui opened the register, the younger man put a gun to Pagui's head, but Pagui grabbed the gun and tried to wrest it away. As the two struggled, the older man emptied the register. Pagui eventually lost hold of the gun and the robbers fled, though the younger man paused at the door to fire a shot at Pagui, which missed. Pagui saw the robbers get into a Chevy Avalanche and speed off.

Shortly thereafter, the Memphis police received a tip that Davis was the younger of the two robbers. The police arrested and questioned him. Sergeant Daniel Switzer advised Davis of his *Miranda* rights by reading verbatim from the Memphis Police Department's advice-of-rights form. Davis then read the form himself, and initialed and signed it. Switzer asked Davis a set of preliminary questions listed on the second page of the form, including whether Davis was "under the influence of any intoxicants or drugs." Switzer wrote "no" next to that question. After the preliminary questions, Davis confessed to both robberies. Switzer then played some security footage from the Circle K, which showed Green performing oral sex on Davis while he pointed a gun at her. Switzer tried to ask Davis about the sexual assault, but Davis refused to answer further questions after he saw the video.

Davis was thereafter charged with two counts of robbery, in violation of 18 U.S.C. § 1951, and two counts of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). Before trial, Davis moved to suppress his confession, alleging that he had been high on drugs when he was interviewed. The district court held an evidentiary hearing on the motion. Switzer testified that, when he asked Davis about drugs, Davis unequivocally denied being intoxicated—which is why, Switzer said, he wrote "no" next to the question on the advice-of-rights form. Switzer also said that nothing he saw during the interview made him question Davis's sobriety. Instead, to Switzer, Davis seemed "alert," "calm," and "coherent." Davis also testified at the hearing, stating that he had smoked marijuana and taken prescription pills the morning of the interview, which made him feel "numb" and "lazy." Davis said that, when Switzer asked whether he was on drugs, he responded "yes" and told Switzer exactly what he had taken. Finally, Davis admitted that, once Switzer had read him his rights, he understood that he did not need to answer Switzer's questions. After the hearing, the district court denied Davis's motion to suppress, holding that Davis had understood his rights, that he had not told Switzer about his drug use, and that Davis's *Miranda* waiver was therefore valid.

Davis also filed pre-trial motions to exclude all evidence that he sexually assaulted Green and for separate trials on the two robbery charges. The district court denied both motions. The sexual assault was admissible, the court held, because it was "part and parcel" of the robberies and helped establish whether Green had "a fair opportunity to observe" Davis. And the robberies should be tried together, the court concluded, because they were "part of the same course of conduct," and the evidence of sexual assault would not prejudice Davis on either charge.

At trial, Green testified that Davis had sexually assaulted her. The Government also introduced the security footage from the Circle K, which showed the robbery from beginning to

end, including the assault. In rebuttal closing, the Government played the video a second time, pausing it right before the assault began. The prosecutor told the jury that he was not going to "discuss the pink elephant in the room" and urged the jurors "not to think about [it]." The prosecutor also condemned Davis for taking advantage of Burford, who, the prosecutor said, had done a "good deed" by helping Davis when he ran out of gas.

The jury convicted Davis on all counts, and the district court sentenced him to 477 months in prison. This appeal followed.

II.

A.

Davis first argues that he was incapable of waiving his *Miranda* rights because he was high on drugs when Switzer questioned him. We review de novo the district court's conclusion that Davis waived his rights, but review for clear error the factual findings underlying that conclusion. *United States v. Al-Cholan*, 610 F.3d 945, 953 (6th Cir. 2010).

A suspect successfully waives his *Miranda* rights only if he does so knowingly and voluntarily. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). A waiver is knowing if the suspect understands that he may "choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Colorado v. Spring*, 479 U.S. 564, 574 (1987). A waiver is voluntary if the suspect's decision to talk is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421. We assess whether a waiver is knowing and voluntary "primarily from the perspective of the police," asking whether the officers had "reason to believe that [the suspect] misunderstood" his rights or felt compelled to waive them. *See Garner v. Mitchell*, 557 F.3d 257, 263 (6th Cir. 2009).

Davis contends that his *Miranda* waiver was unknowing because the drugs he took prevented him from understanding his rights. But the evidence suggests that Davis did understand his rights: Davis admitted at the suppression hearing that, once Switzer read him his rights, he knew he could remain silent—and Davis exercised that right partway through the interview by refusing to answer questions about sexually assaulting Green. Moreover, even if Davis did not understand his rights, Switzer had no way of knowing that. As in *Garner*, where the suspect "appeared perfectly normal and very coherent," 557 F.3d at 262 (internal quotations omitted), Switzer found Davis to be "alert," "calm," and "coherent." And though Davis claims he told Switzer that he had taken drugs before the interview, Switzer testified that Davis said he had not taken any. The district court believed Switzer rather than Davis—partly because the advice-of-rights form corroborated Switzer's account—and that credibility determination was not clearly erroneous. Davis's waiver was therefore knowing.

Davis also contends that his waiver was involuntary because the drugs prevented him from making a "deliberate choice" to waive his rights. But again, Switzer did not know about the drugs, and therefore could not have known about any effect they might have had on Davis's decision to talk. Thus, Davis's waiver was also voluntary, and the district court was correct to deny his motion to suppress.

B.

Davis next argues that the district court should have excluded all evidence that he sexually assaulted Green under Federal Rules of Evidence 404(b) and 403. We review the district court's evidentiary rulings for an abuse of discretion. *United States v. Young*, 847 F.3d 328, 349 (6th Cir. 2017).

Rule 404(b) prohibits the Government from introducing evidence of a crime that the defendant has not been charged with, but only if the Government intends to use that evidence "to prove [the defendant's] character" and argue that he "acted in accordance with [that] character" in the case at hand. Fed. R. Evid. 404(b)(1). Here, the Government did not introduce the evidence for that reason, but for two permissible ones.

First, the Government introduced the evidence because, without it, there would have been an unexplained gap in both Green's testimony and the video of the Circle K robbery. As the Supreme Court has recognized, jurors "who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters," and may feel uncomfortable reaching a verdict when they know "that more could be said than they have heard." *Old Chief v. United States*, 519 U.S. 172, 189 (1997). For that reason, the prosecution may introduce evidence of other crimes if the evidence "forms an integral part of a witness's testimony" or "completes the story of the charged offense." *United States v. Gibbs*, 797 F.3d 416, 423 (6th Cir. 2015) (citation omitted). Here, the evidence of sexual assault does both.

Second, the evidence of sexual assault helped prove that Green had correctly identified Davis. The assault lasted for at least four minutes—the time it took for the safe to release $40. And during those four minutes, Green was close enough to Davis to perform oral sex on him. In sum, the Government introduced evidence of the assault not to prove Davis's character, but to complete Green's story and prove that she had correctly identified Davis. The evidence was therefore admissible under Rule 404(b).

Davis also contends that the evidence was inadmissible under Rule 403 because the evidence's "probative value [was] substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. As explained above, however, the evidence was compelling proof that Green

had correctly identified Davis. And the robber's identity was the central issue in the case, given Davis's defense. Moreover, the evidence had probative value beyond its tendency to prove identity because it filled what otherwise would have been a sizable hole in the prosecution's story of the case. *Old Chief*, 519 U.S. at 186-89. Given that probative value, the evidence of sexual assault was admissible under Rule 403.

## C.

Davis also argues that, given how prejudicial the evidence of sexual assault was, the district court should have held separate trials for the Circle K and Marathon robberies. Davis did not renew his motion to sever at the close of evidence, so we review only for plain error. *United States v. Talley*, 194 F.3d 758, 765 (6th Cir. 1999).

Under Federal Rule of Criminal Procedure 14(a), a district court may "order separate trials of counts," if "the joinder of offenses . . . appears to prejudice a defendant." Joinder is not prejudicial if, had two counts been tried separately, the evidence on each count would have been admissible in the other trial. *United States v. Harris*, 635 F.2d 526, 527 (6th Cir. 1980). That is the case here. The Circle K and Marathon gas stations are less than 2 miles from each other, and were robbed 30 minutes apart. In each robbery, the man with the gun appeared to be about 20, and wore a dark-colored hoodie, black-and-white pants, and a bandana. Given those similarities, it was likely that the same person committed both crimes. Thus, any evidence admissible to prove that Davis robbed the Circle K—which, as explained above, includes the evidence of sexual assault—would also have been admissible to prove that Davis robbed the Marathon, even in a separate trial on the Marathon charge alone. *Harris*, 635 F.2d at 527; *see also United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006). The joinder of the robbery charges did not prejudice Davis. Thus, there was no error.

D.

Davis next argues that the prosecutor made improper remarks in rebuttal closing. A prosecutor's remarks are improper if they are "calculated to incite the passions and prejudices of the jurors." *United States v. Crumpton*, 824 F.3d 593, 618 (6th Cir. 2016) (internal citation omitted).

Davis first takes issue with the following remark:

Matter of fact, there's an old saying. No good deed goes unpunished. That's unfortunate 'case [sic] we need to be about good deeds. We need to be about good deeds. As much as we hear about officers today in this day and time, a [sic] officer stopping to help somebody who ran out of gas and take them to a gas station? Isn't that a good deed, ladies and gentlemen? Don't we want our officers doing that, and during that interaction you think he can't see and identify the person he's dealing with? No good deed.

We forget about Officer Burford being victimized. He was the one who took the defendant to the store. That's how he got good will.

In Davis's view, the prosecutor should not have referred to any harm to Burford, because Davis was not charged with harming him. But there was nothing prejudicial about the prosecutor pointing out the full extent of the harm Davis had caused. The prosecutor's remark was therefore proper.

Davis also complains that the prosecutor drew attention to the sexual assault in rebuttal. The prosecutor played the surveillance video from the Circle K, paused it before the assault began, and said:

For 10 minutes, I did not say a word [while I played the video], but I can sense, I can see you looking down as you're looking at some of this because you've been here long enough. You know what's coming on those videos. I don't even have to discuss the pink elephant that was in the room. That's the reason I stopped the video. That's not—that's not—we don't want you to think about that.

The prosecutor did not incite the jurors' prejudices when he acknowledged the sexual assault and then asked the jurors not "to think about [it]." Thus, the prosecutor's second remark was also proper.

E.

Finally, Davis argues that the cumulative effect of the alleged errors discussed above warrants a new trial. But none of the alleged errors are actual errors. And "the cumulative effect of non-errors" cannot require reversal. *Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004) (internal citation omitted). Davis's final argument fails.

\* \* \*

The district court's judgment is affirmed.