RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0046p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ANDREW LEE THOMAS, JR.,

　　　　　　　*Petitioner-Appellant,*

　　*v.*

UNITED STATES OF AMERICA,

　　　　　　　*Respondent-Appellee.*

No. 15-6200

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
Nos. 2:98-cr-20100; 2:03-cv-02416—Jon Phipps McCalla, District Judge.

Argued:  November 2, 2016

Decided and Filed:  February 24, 2017

Before: MERRITT, SILER, and DONALD, Circuit Judges.

---

## COUNSEL

**ARGUED:**  Kevin Wallace, WINSTON & STRAWN LLP, New York, New York, for Appellant.  Tony R. Arvin, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.  **ON BRIEF:**  Kevin Wallace, Elizabeth Cate, Mollie Richardson, WINSTON & STRAWN LLP, New York, New York, for Appellant.  Tony R. Arvin, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

---

## OPINION

---

　　MERRITT, Circuit Judge.  Petitioner Andrew Lee Thomas, Jr. appeals the district court's order denying his habeas corpus petition under 28 U.S.C. § 2255 for relief from his federal court conviction.  This case is a companion to *Andrew L. Thomas v. Westbrooks*, No. 15-5399 (6th Cir.

Feb. 24, 2017), which addresses Thomas's habeas petition for relief from his state court conviction and sentence of death. These cases, while addressing similar facts, are different because the state case arises primarily from a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The *Brady* claim fails in the federal case due to the sequence of the trials. The *Brady* violation in the state case, that the government did not disclose that witness Angela Jackson had received compensation after her federal testimony, occurred after the conclusion of Thomas's federal trial. Accordingly we **AFFIRM** the district court's denial of the § 2255 motion.

## I. Background

Thomas was convicted of robbing and shooting an armored car courier. On April 21, 1997, Loomis-Fargo courier James Day was shot in the back of the head by Thomas during a pick-up. Thomas grabbed the money and checks that Day had been transporting and left the scene with another suspect, later identified as Anthony Bond. After fleeing the scene in a stolen Pontiac, they abandoned that vehicle and drove off in a red Suzuki which belonged to Thomas's girlfriend at the time, Angela Jackson. Bond was later arrested on unrelated charges. Police subsequently matched Bond's fingerprints to a fingerprint from the stolen Pontiac. Eventually Bond confessed to the Loomis-Fargo robbery and implicated Thomas. FBI agents questioned Angela Jackson, who was then separated from Thomas. Jackson implicated Thomas in the robbery and also disclosed that he used the crime's proceeds to buy a Mossberg 12-gauge shotgun in violation of his felon status.

During Thomas's federal trial, the jury heard testimony from both Anthony Bond and Angela Jackson. After the federal trial concluded but before the state prosecution began, the FBI paid Jackson $750 on behalf of the Safe Streets Task Force—a joint federal-state law enforcement group charged with investigating and prosecuting gang-related crime.

On November 13, 1998, the federal jury convicted Thomas of robbery affecting commerce in violation of 18 U.S.C. § 1951 (count one), using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (count two), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (count three). For these crimes he was sentenced as an armed career criminal to life imprisonment plus five years, to be followed by five years

supervised release.  On direct appeal, the Sixth Circuit affirmed.  *United States v. Thomas*, 29 F. App'x 241 (6th Cir. 2002).**¹**

In 2003 Thomas filed an 18 U.S.C. § 2255 motion for habeas corpus relief.  In the amended motion Thomas puts forward multiple ineffective assistance of counsel claims, and also argues that the government violated his due process rights as articulated in *Brady v. Maryland* by withholding evidence of a payment to witness Angela Jackson.

## II.  Analysis

### A.  Standard of Review

This court reviews a district court's dismissal of a § 2255 petition de novo, but will overturn a district court's factual findings only if they are clearly erroneous.  *Braden v. United States*, 817 F.3d 926, 929 (6th Cir. 2016).  For a § 2255 motion to succeed, the petitioner must demonstrate error of constitutional magnitude which had a substantial and injurious effect or influence on the jury's verdict.  *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003).

### B.  Ineffective Assistance of Counsel as to Count Three (Felon-in-Possession)

#### 1.  Failure to Request a Severance

Thomas argues that his trial counsel erred by not moving to sever count three, felon-in-possession of a firearm, from the robbery counts.  Specifically Thomas claims that his attorney should have filed a pretrial motion to sever count three as improperly joined under Federal Rule of Criminal Procedure 8(a) or filed a motion to sever due to prejudicial joinder under Rule 14(a).  Thomas alleges that since a pistol formed the basis of counts one and two and a shotgun formed the basis of count three, it was improper to include count three in the indictment.  Evidence was presented at trial that the shotgun forming the basis of count three was purchased with the proceeds from the robbery set forth in counts one and two, despite not being used during the

---

**¹**After Thomas's federal court conviction, the armored car courier died as a result of his injuries suffered during the robbery.  In 2005, Thomas was convicted in Tennessee state court for felony murder and sentenced to death. *Tennessee v. Thomas*, 158 S.W.3d 361, 417 (Tenn. 2005).  The district court dismissed his habeas motion for relief from his state convictions.  This court addresses his appeal of that decision in the companion case, and grants the petition. *Thomas v. Westbrooks*, No. 15-5399 (6th Cir. Feb. 24, 2017).

robbery itself. The Government argues that count three was not misjoined, and argues alternatively that any error was harmless.

To prove deficient performance by counsel that violated the Sixth Amendment, Thomas must demonstrate that representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of a case, *Strickland*, 466 U.S. at 694, and this court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Disputes of whether the counts of an indictment are to be joined or severed are governed by Federal Rules of Criminal Procedure 8 and 14. Rule 8(a) allows the joinder of two or more offenses in the same indictment or information if the offenses charged are "of the same or similar character," "based on the same act or transaction," or connected by a "common scheme or plan." Fed. R. Crim. P. 8(a). Whether a joinder was appropriate under Rule 8(a) is determined by the allegations on the face of the indictment. *United States v. Chavis*, 296 F.3d 450, 456-57 (6th Cir. 2002). Once a count has been joined, a district court may grant a Rule 14 motion to sever the count if the joinder "appears to prejudice a defendant." Fed. R. Crim. P. 14. To prevail on a request for severance the defendant must show compelling, specific, and actual prejudice. *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008).

In the present case, count three of the indictment is sufficiently related to the other counts of the indictment to warrant joinder. It is true that the purchasing of the shotgun was an event that took place three days after the armed robbery and shooting. However, the shotgun was illegally purchased with the proceeds of the armed robbery for the purpose of protecting property also bought with the same proceeds. The facts of the robbery are the facts that underlie the purchasing of the shotgun. The counts are not simply connected "in the abstract," but are linked by time and purpose. *See Chavis*, 296 F.3d at 458. Moreover, the trial evidence concerning the purchase of the shotgun was obtained in the process of investigating the robbery, and comes

from the same witness.  Joinder is proper when the evidence of the counts is intertwined.  *See United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006).

Even if count three was not sufficiently related, there is little compelling evidence that the joinder prejudiced the defendant and denied him a fair trial.  A defendant is prejudiced by a joinder if the jury cannot "keep the evidence from each offense separate and [is] unable to render a fair and impartial verdict on each offense." *United States v. Rox*, 692 F.2d 453, 454 (6th Cir. 1982).  The purpose of Rule 8(a) is "to promote the goals of trial convenience and judicial efficiency." *United States v. Wirsing*, 719 F.2d 859, 862 (6th Cir. 1983).  Thomas fails to present compelling arguments that actual prejudice existed and outweighed the interests of the court.  He does not articulate how a straightforward presentation of the evidence in the case would realistically confuse or prejudice a jury in issuing an impartial verdict.  The arguments that "spillover evidence" from counts one and two convinced the jury to convict him of count three, and vice versa, are mere speculation, as is Thomas's claim that his list of prior offenses from count three prejudiced the jury to change the verdict.  A spillover of evidence between counts does not require severance unless there is "substantial," "undue," or "compelling" prejudice.  *United States v. Fields*, 763 F.3d 443, 457 (6th Cir. 2014); *see also United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992).

The district court properly determined that the trial evidence demonstrated that the robbery and shooting were committed with a pistol, rather than with the shotgun in count three.  No reasonable juror could have confused which of the two weapons was used in the robbery.  Prejudicial joinder is especially unlikely when the jury can adequately "compartmentalize and distinguish the evidence concerning the different offenses charged." *United States v. Cody*, 498 F.3d 582, 587 (6th Cir. 2007) (quoting *Chavis*, 296 F.3d at 462).  Moreover, the district court clarified during the reading of the indictment and jury instruction that the jury must consider each charge separately.

Joining count three to the indictment promotes the interests of trial convenience and judicial efficiency.  *Wirsing*, 719 F.2d at 862.  The "significant overlap of [] witnesses presented on each offense" and intertwining evidence also allow joinder here.  *Tran*, 433 F.3d at 478.  Thomas's speculations about the influence of count three on the jury are insufficient to show a

prejudicial effect from the joinder that his counsel would have been obligated to combat. As such Thomas's counsel was not deficient in failing to request severance of the counts, since there is no reason to think it would have affected the outcome of the proceeding.

### 2. Failure to Request a Limiting Jury Instruction

Thomas argues that the jury instruction was not sufficient to limit prejudice resulting from the joinder of count three. The Government argues that the district court, as well as counsel for both sides, emphasized that the gun was purchased after the robbery, and that the jury instruction sufficiently informed the jury to distinguish the evidence underlying the counts.

The district court jury instruction was as follows:

> The defendant in this case is charged with three crimes. The number of charges is no evidence of guilt and this should not influence your decision in this case in any way.
> It is your duty to separately consider the evidence that relates to each charge and to return a separate verdict for each one.
> For each charge, you must decide whether the government has presented proof beyond a reasonable doubt that the defendant is guilty of that particular charge.
> Your decision on one charge, whether it is ultimately guilty or not guilty, should not influence your decision on any of the other charges.

This court has upheld similar jury instructions about overcoming the prejudicial effect of an improper joinder. *See Cody*, 498 F.3d at 588; *see also Chavis*, 296 F.3d at 462. Misjoinder is almost always harmless if the court issues a careful limiting instruction to the jury concerning possible prejudice. *Cody*, 498 F.3d at 587.

Beyond speculation there is no evidence supported by the trial record that the jury was confused about the nature of the firearm counts. Thomas is unable to show a reasonable probability that the result of the trial would have been different had his counsel attempted to limit the jury instruction.

### C. Ineffective Assistance of Counsel for Failure to Present Evidence that Another Individual Committed the Offense

Thomas contends that his counsel should have better investigated and presented evidence that Bobby Jackson was actually the getaway driver and Anthony Bond committed the robbery.

Most of Thomas's arguments for this strategy are plausible, but legitimate reliability and admissibility concerns prevent Thomas from demonstrating that the decision not to pursue this strategy was unreasonable or prejudiced the outcome of the case. *See Strickland*, 466 U.S. at 688-89.

Thomas puts forward multiple arguments of varying strength that the robbery was actually committed by Jackson and Bond. First, he argues that defense counsel did not sufficiently emphasize at trial that Bobby Jackson was identified as the driver of the getaway vehicle on two separate occasions by a witness to the crime, Robert Fisher. Both identifications were made to the FBI based on a photographic array several months after the incident. At trial, defense counsel called Fisher and asked him to testify to the identification he made during the investigation. But during the testimony Fisher admitted that he could not definitively identify the driver or identify him in the courtroom: "Well, I was asked can you identify anybody. I told them at the time I couldn't definitely. I could say that one of them looked like the guy that I saw driving."

Thomas claims that his counsel should have emphasized during Fisher's testimony that Fisher identified the same picture in the photo array on two separate occasions, and that defense counsel should have elicited the fact from Fisher that the person in the photo was Bobby Jackson. As the district court noted, the information was cumulative to the testimony that had been presented, and the language used by Fisher when he viewed the photo array was inadmissible as hearsay. Moreover, defense counsel could not have elicited from Fisher that the name of the person he identified was Bobby Jackson, as Fisher lacked any personal knowledge of Bobby Jackson. It is unclear what additional value Robert Fisher might have been able to provide to the credibility of Thomas's defense.

Second, Thomas claims his counsel failed to present the eyewitness testimony of Gail McDonald, and alleges that McDonald's description in her FBI statement of one of the suspects as "heavyset" and "wearing blue jeans" does not match Thomas. But McDonald's testimony would still have hurt Thomas. While she described one suspect as "heavyset," she described the other suspect's attributes fairly closely to Thomas's appearance. It is probable that Thomas's counsel might have found McDonald's testimony damaging to his client and decided not to call

her.  Thomas also makes cursory references to "numerous eye witnesses" like McDonald that he suggests would have been helpful for the Bobby Jackson defense, all of which the district court properly identifies as unhelpful or even harmful to the defense.

Third, Thomas identifies a letter that he allegedly received from Anthony Bond as proof that counsel should have more thoroughly investigated Bobby Jackson.  The letter declares that Bond and Angela Jackson lied about Thomas's involvement in the Walgreens robbery in order to protect Bobby Jackson, because Angela Jackson and Bobby Jackson had been in a romantic relationship when Angela was seeing Thomas.  The evidence below shows the letter to be a forgery written after Thomas's federal convictions.  Bond, through his post-conviction representation, has denied writing the letter.  At trial the Government produced handwriting expert testimony that concluded the letter was a forgery.  Even if the letter was not a forgery, "this court views with great suspicion the recantation testimony of trial witnesses in post-conviction proceedings." *Brooks v. Tennessee*, 626 F.3d 878, 897 (6th Cir. 2010).  While it is possible that evidence of a romantic relationship with Bobby Jackson might have drawn Angela's credibility further into question, the district court found the testimony of witnesses to the romantic relationship extremely suspect.

Finally, Thomas argues that his counsel should have introduced evidence that Bobby Jackson had committed an armored car robbery at Southbrook Mall three months after the Walgreens robbery.  The district court found that these two robberies were significantly different, and that there was no real evidence linking Jackson to the Walgreens robbery. Potential evidence that inmate Stephen Briscoe claimed Jackson had admitted committing other robberies offered no connection to the Walgreens robbery.

The claim that Thomas's counsel should have more aggressively pursued the "Bobby Jackson" strategy is questionable at best.  All of the potential evidence Thomas presents of Bobby Jackson's involvement is riddled with reliability and admissibility issues.  Thomas fails to produce compelling evidence that his counsel was deficient in not presenting more evidence of Bobby Jackson as a suspect, and he fails to demonstrate prejudice resulting from the alleged deficiency.

**D. Ineffective Assistance of Counsel for Failure to Investigate Alibi Testimony**

The parties disagree as to whether this claim has been waived. In his initial brief on appeal, Thomas dedicates one footnote to the claim. Even if Thomas properly presented this claim, it is meritless. At trial the Government effectively rebutted testimony that the alibi witness, Thomas's girlfriend Dana Wiggins, was with Thomas at the time of the robbery by proving that Wiggins was lying. Before the trial, Thomas's counsel interviewed Wiggins and Thomas multiple times, and warned them of the harms in presenting a false alibi defense. Thomas's counsel also interviewed Thomas's mother, who corroborated Wiggins's story. The district court is correct that Thomas was entitled to a competent defense, but not a perfect one. *Crehore v. United States*, 127 F. App'x 792, 796 (6th Cir. 2005). Thomas's counsel was not deficient in failing to protect a client from the client's own deceit.

**E. Ineffective Assistance of Counsel for "Cumulative Errors"**

Whether an attorney's representation amounted to incompetence is a question of whether the attorney adhered to "prevailing professional norms," and not whether it deviated from best practices or most common custom. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). As such, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371-72 (2010). While it is true that multiple errors by trial counsel can cumulatively result in a Sixth Amendment violation, this is not the case at hand. *See Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004). Individually, each of Thomas's Sixth Amendment claims fail, and bundling them together does not increase their merit. *See id.*

Thomas argues that his trial attorney committed multiple errors, which cumulatively result in a violation of his right to effective counsel. The alleged errors include those discussed above: (i) failure to move to sever Count Three; (ii) failure to request a limiting instruction; (iii) failure to investigate and present the "Bobby Jackson" defense; and (iv) failure to sufficiently investigate the alibi testimony. Thomas then adds: (v) failure to present exculpatory evidence promised during the opening statement; and (vi) failure to object to the Government's repeated showing of the surveillance video that had little probative value, but was highly prejudicial to Thomas.

Thomas's arguments concerning the opening statement and the failure to object are not sufficiently supported to prove a Sixth Amendment claim. Thomas does not articulate how these actions specifically were deficient or how they specifically prejudiced the outcome of the case. Instead, they are tacked on to a list of the failed ineffective assistance of counsel arguments. A party waives issues that he adverts to in a perfunctory manner, unaccompanied by some effort at developed argumentation. *United States v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016). All of the cumulative errors Thomas cites are either waived or fail.

## F. *Brady* Claim

Thomas asserts that his due process rights were violated when federal prosecutors did not disclose that Angela Jackson had been compensated for her testimony. *See Brady*, 373 U.S. at 87. At the district court, Thomas's *Brady* claim was denied in a non-final order. As the order was non-final, it was unnecessary at that time for the district court to indicate whether it granted a Certificate of Appealability (COA) for the claim. When the court determined in its final order which claims were or were not granted a COA, it did not address the *Brady* claim. Thomas eventually requested a COA on the issue of whether he was precluded from pursuing his *Brady* claim, which was granted. This court may elect to consider claims that both parties have extensively briefed. *United States v. Martin*, 438 F.3d 621, 628 (6th Cir. 2006). The district court's failure to address the appealability of the *Brady* claim appears to be an oversight. Thomas did not intend to waive his claim, nor is the Government prejudiced by allowing the claim to be presented.[2] The COA granted by this court was proper, and the *Brady* claim concerning Angela Thomas's testimony is not precluded.[3]

Although Thomas's remaining *Brady* claim is not waived, it ultimately fails on the merits. Under *Brady*, Thomas must show that the Government failed to share evidence favorable to the accused, and that the suppression of evidence prejudiced the defendant. *Montgomery v. Bobby*, 654 F.3d 668, 678 (6th Cir. 2011) (en banc). Thomas claims that the Government failed

---

[2]The Government requested that this court hear the *Brady* claim on the merits in the interest of judicial economy.

[3]While Thomas's *Brady* claim as to Angela Jackson's testimony is not waived, Thomas has waived the *Brady* claim argued at the district court that the Government did not disclose evidence of eyewitness Gail McDonald failing to identify Thomas in a photo array. As that argument is not presented in Thomas's brief, it is waived.

to disclose evidence that it intended to pay Angela Jackson for her federal testimony. Angela Jackson did receive $750 after Thomas's federal trial. *Brady* requires the disclosure of all material evidence to the defendant even if the evidence is only relevant for the purpose of impeaching government witnesses at trial. *Bell v. Bell*, 512 F.3d 223, 232 (6th Cir. 2008) (en banc) (citing *United States v. Bagley*, 473 U.S. 667, 676-77 (1985)). A defendant has the constitutional right to impeach a witness by showing bias. *Robinson v. Mills*, 592 F.3d 730, 737 (6th Cir. 2010).

The timing of the payment to Angela Jackson, which took place after the federal trial but before the state trial, causes Thomas's federal *Brady* claim to fail. U.S. Marshal Scott Sanders, who was part of the Safe Streets Task Force, submitted an affidavit that Angela Jackson had not been informed ahead of time that she would be compensated for her cooperation or that she was at risk of facing prosecution for assisting Thomas. While Sanders previously stated during an evidentiary hearing conducted by the district court that he believed Angela Jackson was informed during the investigation that she might have potential criminal liability, he also stated that no one suggested to Jackson that she would be subject to arrest. Sanders subsequently stated that investigators did not anticipate, plan, or discuss with Angela Jackson a payment to be made to her after the federal trial.

Thomas is unable to present evidence that Angela Jackson had knowledge before her federal testimony that she would receive the money, or that she made a deal to testify in lieu of being prosecuted. Thomas argues that the circumstance of her not being prosecuted gives rise to the presumption that a "deal" was made with Jackson before the trial. But this inference alone is insufficient basis for a *Brady* claim. *See Jefferson v. United States*, 730 F.3d 537, 552 (6th Cir. 2013); *Mathews v. Ishee*, 486 F.3d 883, 895 (6th Cir. 2007) (explaining that an inference that the prosecution must have made a pre-trial deal with a witness in exchange for testimony is itself insufficient basis for a *Brady* claim). Nor does the fact that a witness was later compensated for her testimony give rise to a sufficient presumption for a *Brady* claim. *Bell*, 512 F.3d at 234. If the Government had the ability or obligation to disclose to Thomas the eventual compensation, it is plausible that the withholding of evidence might have affected the outcome of the case. But

during the federal trial the Government had no obligation to disclose to the defendant whether it was considering the eventual payment to Jackson.

Finally, Thomas appeals the district court's denial of his request for additional discovery on the *Brady* claim. Here again the district court did not abuse its discretion, as the movant was unable to show good cause for more discovery. *See Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004). Rule 6(a) of the Rules Governing § 2255 Proceedings allows the district court to enable further discovery in a habeas proceeding where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief. *Harris v. Nelson*, 394 U.S. 286, 300 (1969); *Cornell v. United States*, 472 F. App'x 352, 354 (6th Cir. 2012). Thomas's request for discovery fails for much the same reason that his *Brady* claim fails on the merits. Beyond mere speculation, Thomas provides no evidence that the Government withheld evidence that it was obligated to disclose. Bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the government to respond to discovery or to require an evidentiary hearing. *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

Accordingly the district court's denial of the writ is **AFFIRMED**.