NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0067n.06

No. 24-5253

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td><td>ON APPEAL FROM THE</td></tr>
<tr><td></td><td>)</td><td>UNITED STATES DISTRICT</td></tr>
<tr><td>v.</td><td>)</td><td>COURT FOR THE EASTERN</td></tr>
<tr><td></td><td>)</td><td>DISTRICT OF TENNESSEE</td></tr>
<tr><td>DESHAWN WHITED,</td><td>)</td><td></td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td><td>OPINION</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

**FILED**
Feb 05, 2025
KELLY L. STEPHENS, Clerk

Before: BATCHELDER, BUSH, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Police arrested Deshawn Whited in connection with a string of armed robberies and a carjacking. During his criminal proceedings, Whited filed several evidentiary motions, a motion to sever certain claims for a separate trial, and a motion for acquittal based on insufficient evidence. The district court denied those motions, and a jury convicted him of eleven charges. Now, Whited appeals the district court's denial of his motions and challenges the sufficiency of the evidence supporting his conviction. Because none of his challenges meet their burden, we affirm.

**BACKGROUND**

This case arises from a string of armed robberies and a carjacking in Knoxville, Tennessee. A jury eventually convicted Deshawn Whited of many of these crimes. We summarize the events that led to this appeal.

## I.       The Crimes

The government accused Whited of committing seven armed robberies—six of which were charged in the indictment—and a carjacking.

*First robbery.* A man wearing a hoodie and a blue surgical mask walked into a convenience store, brandished a silver pistol, and demanded money. He stole roughly $60 from the register and $20 from a customer. Then he drove away in a silver Jeep.

*Second robbery attempt.* Eleven days later, a man approached a customer sitting in her car in a grocery store's parking lot, pointed a gun at her, "pointed to the strap on [her] purse," and "put the gun in [her] face." Trial Tr. Vol. II, R. 130, PageID 1993. She saw his face, then closed her eyes and began screaming. The robber left without taking anything and drove away. The customer immediately contacted the police, reporting that she had been robbed by a Black man with a facial tattoo who drove away in a silver Jeep with a license plate starting in "8W4." A store employee who saw the incident also told police that the perpetrator had "lighter skin tone," a "tattoo on [his] face," and wore a black hoodie. *Id.* at PageID 2008. This attempted robbery wasn't charged in the indictment.

*Third robbery.* One month after that, an armed robber struck a gas station. Cashiers recalled that a Black man with "mixed" skin tone walked in, demanded money, and threatened them with a silver handgun. *Id.* at PageID 2018, 2024. He wore a black hoodie and a red bandana covering his face, so they couldn't make out his facial features clearly. The robber took around $400 and left in a silver Jeep. One of the cashiers reported to police that the Jeep's license plate was "4P13V1." Police discovered that plate had been reported stolen the same day.

*Fourth robbery attempt.* The very next day, someone tried to rob a restaurant. Staff reported that a man walked in, pulled out a silver handgun, and told a waitress to "give him all [her] money." *Id.* at PageID 2035. He wore a red bandana covering his face. But the waitress, telling the robber

that he had "picked the wrong" restaurant, walked him to the door and he left. *Id.* The staff then called 911 and reported that a roughly six-foot tall, "light skinned" Black man wearing "blue and white" shoes had robbed them and driven away in a "silverish" Jeep with plate number "4P13V1."

*Fifth robbery.* Later the same day, a man robbed a different gas station at gunpoint. Here too, the robber brandished a silver handgun and demanded the cashier give him money. This time, the robber grabbed around $180 from the register and more from a customer. Employees later described him as a "light skin[ned]" man with a "cheek tattoo" and "medium length dreads." *Id.* at PageID 2050. They also said he drove away in a gray Jeep. Surveillance footage showed the robber wearing blue-and-white shoes.

*Sixth robbery.* Two days later, two men in a "bluish-grayish" Jeep pulled up to the drive-through window of a fast-food chain, and the driver pointed a "gray" handgun at the cashier and told her to hand over "all the money in the register." *Id.* at PageID 2059. She gave them about $200 and they drove away. When she called 911, the cashier said the men wore "red bandanas" covering their faces and "hoods on their heads." Gov't Ex. 30 at 1:40–1:42. Though she couldn't get a good look at their faces, she described them as Black.

*Seventh robbery.* Two days after that, a robber struck another gas station. Afterward, staff described the robber as "light skinned" with a "tattoo on his face." Trial Tr. Vol. II, R. 130, PageID 2074, 2084–85. They also told police he drove away in a silver Jeep with plate number 4P13V1 or 4PI3V1. Surveillance footage showed the robber wearing a red bandana and black-and-white Adidas shoes. He used a silver handgun.

*Carjacking.* Just a few days after the last robbery, a man reported he had been carjacked. The victim was driving his 2001 Honda Accord when he stopped at an intersection. A "light skinned" "African American" man with a facial tattoo walked up to his driver's side window,

pointed a "silver and black" handgun in his face, and said, "You know what to do. Get out of the car." Trial Tr. Vol. III, R. 131, PageID 2133–34; Def. Ex. 1 at 0:55–1:05. Afraid he'd be shot, the victim complied, and the carjacker drove away in the Accord. The driver reported the incident to the police and, about two or three hours later, sat for an interview at the police station. He identified Whited out of a photographic lineup.

## II.     The Investigation and Arrest

The day after the drive-through robbery, an off-duty officer happened to see a silver Jeep with a license plate matching the partial tag—"8W4"—from the attempted robbery in the grocery store's parking lot. He saw Whited driving the car and logged the full plate number: "8W40P5." Another officer input that number in police databases and discovered it had been registered to a woman named Carlenia Simmons. Databases also identified Whited as Ms. Simmons's son. Then the officer searched Whited's name on Facebook and saw he matched the description of the robber. Ms. Simmons had previously filed a police report listing her address as 4130 Lilac Avenue. When the officer visited that address, he saw the silver Jeep with plate number "8W40P5" parked in the driveway.

Based on these investigations, police got a warrant to attach a GPS tracker to the Jeep. The tracker showed the Jeep traveling to locations that included 4130 Lilac Avenue, Whited's mother's residence. Then, three hours after the carjacking, the GPS tracker showed the Jeep in a parking lot. There, officers observed the Jeep parked next to the stolen Honda Accord and saw people moving between the vehicles. After Whited left the parking lot driving the Accord, the police promptly arrested him. Officers seized Whited's iPhone, a loaded shotgun, and a loaded silver handgun. They remarked that Whited was "wearing the same clothing [he] wore in the robberies," to which he "nodded" and said "yeah." Trial Tr. Vol. II, R. 130, PageID 1937–38. The police also searched the Jeep and in it they found Whited's mail. After they arrested Whited, police obtained a warrant

to search 4130 Lilac Avenue. There, they found mail addressed to Whited and more of the clothing seen during the various robberies.

## III.    Procedural History

A grand jury indicted Whited on fifteen counts that included completed and attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951, carjacking in violation of 18 U.S.C. § 2119, and related firearms charges under 18 U.S.C. § 924(c). The indictment didn't charge Whited with the second attempted robbery. Whited moved to sever his carjacking charges from his other charges, to suppress the carjacking victim's identification during the photographic lineup, to suppress evidence found at 4130 Lilac Avenue, and to exclude evidence of the uncharged robbery. The district court denied his motions.

At trial, the government presented evidence that included the surveillance footage and eyewitness testimony described above, testimony from officers involved in the investigation and arrest, and photographs of items recovered during and after Whited's arrest. A forensic expert also testified that Whited's DNA probably was on the handgun they recovered during his arrest. Another expert testified that Whited's cellphone location data placed it near each crime scene. The jury convicted him of eleven charges covering five of the robberies, most of the associated firearm charges, and the carjacking. It acquitted him of the first robbery, using a firearm during that offense, and brandishing a firearm during the drive-through robbery. Whited moved under Federal Rule of Criminal Procedure 29 for acquittal, arguing the evidence against him couldn't sustain his convictions. The district court denied that motion and Whited timely appealed.

## ANALYSIS

## I.    Sufficiency of the Evidence

"We review a challenge to the sufficiency of the evidence *de novo.*" *United States v. Farrad*, 895 F.3d 859, 871 (6th Cir. 2018) (quoting *United States v. Tocco*, 200 F.3d 401, 424 (6th

Cir. 2000)). Viewing the evidence "in the light most favorable to the prosecution," we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Rosales*, 990 F.3d 989, 994 (6th Cir. 2021) (quoting *Tocco*, 200 F.3d at 424). Circumstantial evidence alone can sustain a conviction. *Id.*

Whited raises distinct arguments for setting aside (1) his Hobbs Act robbery and related firearm convictions, and (2) his carjacking and associated firearm conviction. We discuss each in turn.

### A.      Hobbs Act Robbery and Related Gun Charges

To prove Whited committed Hobbs Act robbery, the government needed to show he (1) unlawfully took property from another, (2) using "actual or threatened force, or violence, or fear of injury" to that person, and (3) affected interstate commerce as a result. *See United States v. Sherrill*, 972 F.3d 752, 765–66 (6th Cir. 2020) (quoting 18 U.S.C. § 1951). To prove attempted robbery, the government needed to show he intended to commit the robbery and took "affirmative acts toward that end." *United States v. Adams*, 214 F.3d 724, 728 (6th Cir. 2000). Whited disputes only whether the evidence showed *he* was the robber. So we focus on the evidence that connected him to the robberies.

The government presented ample evidence connecting Whited to the completed and attempted robberies. Eyewitnesses described the robber as a Black man with "light" or "mixed" complexion, "medium length dreads," and a tattoo on his face. That description fit Whited. The government presented considerable evidence linking Whited to the silver Jeep the suspect drove during the robberies. Location data from Whited's phone placed him near each crime scene. There was evidence Whited possessed a silver handgun matching the one seen during the robberies. Finally, Whited owned clothes and shoes matching those the robber wore. Having heard these

facts, a rational juror could have found Whited guilty beyond a reasonable doubt of the completed and attempted robberies for which he was convicted.

Whited's sufficiency arguments ignore the evidence against him. He contends the jury couldn't "infer that the same vehicle was present at every robbery," because witnesses described the Jeep only generically, the government didn't explain why it bore different plates at different times, and some eyewitnesses didn't report plate numbers. Appellant's Br. at 32. Yet as described above, the government presented considerable evidence connecting him, the Jeep, and the robberies. That not every witness was able to catch his license plate number, or that at some point he started using stolen plates, doesn't negate all that evidence.

Whited next targets differences in how eyewitnesses from each crime described the assailant. As much as he argues those descriptions were inconsistent, that's "a matter of credibility, not sufficiency." *James v. Corrigan*, 85 F.4th 392, 396–97 (6th Cir. 2023). Juries, not appellate courts, evaluate witness credibility. *Id.* at 397.

Finally, Whited attacks the cellphone location data, asserting that the government didn't prove who was carrying his phone during the robberies. But the jury saw text messages Whited sent and videos he recorded around when the robberies occurred. Plus, he had his phone when police arrested him. Drawing all inferences in favor of the verdict, a reasonable juror could assume Whited kept his phone on his person, including when the robberies occurred.

Whited's challenge to his related § 924(c) convictions also fails. He raises only one argument for setting them aside: that there wasn't enough evidence to sustain the underlying robbery convictions to which these firearms charges attached. As we've discussed, there was. So in the end, considering the evidence presented, a reasonable juror could have found him guilty beyond a reasonable doubt of each robbery count and each associated firearm count.

### B.    Carjacking

To prove Whited committed carjacking under 18 U.S.C. § 2119, the government needed to show, among other things, that he "inten[ded] to cause death or serious bodily harm." *See United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008) (citing 18 U.S.C. § 2119). Whited argues the government didn't do so.

What constitutes intent under § 2119? The totality of the circumstances must demonstrate that the defendant "would have at least attempted to seriously harm or kill the driver" if doing so had been necessary to steal the car. *See id.* at 477 (quoting *Holloway v. United States*, 526 U.S. 1, 12 (1999)). The government can't meet its burden just by showing that the defendant brandished a gun. *Id.* at 480. But it can by proving, for example, that the defendant physically touched the victim with the gun, brandished a *loaded* gun, or otherwise acted and spoke in a way that suggested their threats were genuine rather than empty. *See id.* at 480–81; *United States v. Adams*, 265 F.3d 420, 425 (6th Cir. 2001).

Here, there was enough evidence before the jury to prove intent. *First*, officers testified that they arrested Whited a few hours after the carjacking and found the gun from the carjacking, loaded. A juror could reasonably conclude the gun had also been loaded during the carjacking. *See Fekete*, 535 F.3d at 481–82. *Second*, the carjacking victim testified that Whited put "a gun in [his] face" and told him to "[g]et out the car." Trial Tr. Vol. III, R. 131, PageID 2134, 2138, 2142. *Fekete* involved an analogous carjacking. The defendant "pointed the [loaded] gun at [the victim]'s stomach while directing him to exit the pickup truck." 535 F.3d at 482. We held that was enough to show intent under § 2119. Likewise, a reasonable juror here could have determined that Whited possessed the requisite intent to carjack. Because he raises no other challenges to his conviction on the associated § 924(c) charge, that conviction stands too.

As both of Whited's sufficiency challenges fall short, we affirm the district court's denial of his Rule 29 motion.

## II.      Evidence of Uncharged Attempted Robbery

The district court denied Whited's motion to exclude evidence of the attempted parking-lot robbery, which wasn't charged in the indictment. When evaluating the district court's evidentiary ruling, we review legal issues de novo, the district court's findings of fact for clear error, and its ultimate ruling for abuse of discretion. *See United States v. Gibbs*, 797 F.3d 416, 421 (6th Cir. 2015).

Federal Rule of Evidence 404(b) bars admitting evidence of someone's prior bad acts to show their propensity to act badly. *See Flagg v. City of Detroit*, 715 F.3d 165, 175 (6th Cir. 2013). But it allows using evidence of prior bad acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). To determine whether evidence of bad acts can come in under Rule 404(b), district courts consider: "(1) 'whether there is sufficient evidence that the other act in question actually occurred;' (2) 'whether the evidence of the other act is probative of a material issue other than character;' and (3) 'whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.'" *United States v. Emmons*, 8 F.4th 454, 474 (6th Cir. 2021) (quoting *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013)). Whited doesn't dispute that the attempted parking-lot robbery occurred, so we focus on probative value and prejudicial effect.

Evidence of the attempted robbery was highly probative as to Whited's identity and had minimal prejudicial effect. Start with probative value. The attempted robbery's victim provided a partial plate number that matched a Jeep belonging to Whited's mother, which police later saw Whited driving. Also, three aspects of the attempted robbery—the silver Jeep, the assailant's light complexion and facial tattoo, and his use of a gun—connected its perpetrator to the charged

offenses. *See United States v. Mack*, 258 F.3d 548, 554 (6th Cir. 2001). Thus, testimony on the attempted robbery helped identify Whited as the perpetrator of the charged crimes. As for its prejudicial effect, it doesn't appear that evidence from the uncharged attempted robbery "inflame[d] the passions of the jury" or caused them to ignore other evidence. *United States v. Whittington*, 455 F.3d 736, 739 (6th Cir. 2006). The jury convicted Whited of some offenses but acquitted him of one robbery count and two firearms counts, suggesting it didn't assume Whited simply had a propensity to commit crime. The district court didn't abuse its discretion by admitting this evidence.

Whited's arguments to the contrary don't convince us otherwise. He points to differences between the facts of the uncharged attempted robbery and those of other charged crimes. But in analyzing bad acts introduced to prove identity, we don't require "that the crimes be identical in every detail." *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006) (quoting *United States v. Hamilton*, 684 F.2d 380, 385 (6th Cir. 1982)). It's enough for the uncharged and charged conduct to be "substantially similar and reasonably near in time." *Emmons*, 8 F.4th at 475 (quotations omitted). For example, in *Perry*, we held that robberies committed nearly two months apart were reasonably near in time under Rule 404(b). *Perry*, 438 F.3d at 648. And despite "certain distinctions between the two robberies," we held they were substantially similar because the robber entered both banks "carrying a gun in a bookbag and seeking change for $50." *Id.* Here too the charged and uncharged crimes were sufficiently similar.

Thus, we affirm the district court's denial of Whited's motion in limine to exclude evidence of his uncharged attempted robbery.[1]

---

[1] Alternatively, the district court held that evidence of the attempted second robbery was admissible as "intrinsic" evidence. *See United States v. Sadler*, 24 F.4th 515, 554 (6th Cir. 2022).

### III. Motions to Suppress

Whited argues the district court erred by denying his motions to suppress (1) evidence found at 4130 Lilac Avenue, and (2) the carjacking victim's photo-lineup identification. When evaluating the district court's denial of a motion to suppress, we review legal issues de novo and the district court's factual findings for clear error. *United States v. Prigmore*, 15 F.4th 768, 777 (6th Cir. 2021).

### A. Evidence from 4130 Lilac Avenue

Whited argues the affidavit supporting the warrant to search 4130 Lilac Avenue failed to connect that address to any alleged crimes. The Fourth Amendment requires that warrants only be issued "upon probable cause." U.S. Const. amend IV. Probable cause exists where the affidavit's facts, viewed in their totality, indicate "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (en banc) (quoting *United States v. Grubbs*, 547 U.S. 90, 95 (2006)). "Probable cause is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quotation omitted). But it requires "more than mere suspicion." *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quotation omitted).

The affidavit here provided a sufficient nexus between 4130 Lilac Avenue and the robberies. It detailed that a suspect driving a silver Jeep had committed a string of robberies. One victim reported part of the Jeep's plate number to police, and an officer saw Whited driving a matching vehicle. Police determined the license plate belonged to Whited's mother and observed the Jeep at 4130 Lilac Avenue. The affidavit added that the Jeep "was consistently parked" at that address, that it was "likely that the suspect was staying there," and that the Jeep had been "seen

---

Because that evidence satisfied Rule 404(b), we do not reach the district court's alternative holding.

there in between several robberies." Aff., R. 66-1, PageID 308–09. Thus, viewed as a whole, the affidavit raised a "fair probability" that 4130 Lilac Avenue would contain evidence of Whited's suspected crimes. *See Sanders*, 106 F.4th at 462.

Whited points to several supposed deficiencies in the affidavit, but none defeat probable cause. For example, Whited states that the affidavit's "only basis" for searching 4130 Lilac Avenue was that police saw a Jeep there with a license plate starting with "8W4." Appellant's Br. at 47. Whited also faults the affidavit for calling the Jeep "distinct" without more details, and for asserting it was consistently parked at 4130 Lilac Avenue without "stating a basis" for that knowledge. *Id.* Finally, Whited attacks the affidavit for lacking "proof of observation, surveillance, or a confidential informant" placing him at 4130 Lilac Avenue. *Id.* But these granular critiques miss the forest for the trees. We judge an affidavit "on the adequacy of what it *does* contain, not on what it *lacks*, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc) (emphasis added). And we don't require "an exacting degree of specificity." *United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019) (en banc). Viewed from that lens, the warrant provided "a substantial basis for concluding that probable cause existed" to search 4130 Lilac Avenue, and the district court did not err in denying Whited's motion to suppress. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)).[2]

Whited also asserts that the district court should have granted his request for an evidentiary hearing to determine whether the affidavit contained false information. Courts can hold so-called "*Franks* hearings"—named after the Supreme Court's decision in *Franks v. Delaware*, 438 U.S.

---

[2] Because probable cause supported the warrant, we do not address the government's alternative argument that the "good faith" exception to the warrant requirement applies.

154 (1978)—to determine whether to suppress the fruits of a search warrant that resulted from a false statement or material omission. *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008). A defendant is entitled to a *Franks* hearing only if they make a "substantial preliminary showing" that the affidavit contained an intentional or reckless falsehood or omission. *Id.* Whited fails to make this preliminary showing because he hasn't identified any falsehoods or material omissions in the affidavit.

Consider the supposed falsehoods and omissions Whited alleges. *First*, Whited claims the victim of the second robbery identified only two digits of the Jeep's license plate, not three as the affidavit described. The record reflects that the victim identified three *characters* (8W4), hardly a critical distinction. *Second*, the affidavit stated that during the third and fifth robberies, the suspect's silver Jeep bore stolen license plates, not the one registered to Whited's mother. Whited suggests that by "not provid[ing] a basis" for calling the second set of plates stolen, the affidavit contained a material omission. Appellant's Br. at 48. Yet Whited hasn't shown how that omission was material to the probable cause finding. *Third*, Whited says the affidavit failed to mention that a victim of the drive-through robbery described *two* robbers in the Jeep, not just one. But again, he doesn't explain how the presence of a partner in crime would undermine the nexus to 4130 Lilac Avenue, where police "consistently" observed the Jeep they had seen him driving. Aff., R. 66-1, PageID 308. That is, he hasn't shown the omission would have affected the probable cause finding. *Fowler*, 535 F.3d at 416. As a result, Whited has failed to make a "substantial preliminary showing" that he's entitled to a *Franks* hearing.

Thus, we conclude the district court did not err by denying Whited's motion to suppress evidence from 4130 Lilac Avenue and his motion for a *Franks* hearing.

### B.     The Photo Lineup

Next, Whited contends the district court should have suppressed the carjacking victim's photo-lineup identification because it was unduly suggestive. The Due Process Clause of the Fourteenth Amendment "requires suppression of an eyewitness identification" if the identification process was "unnecessarily suggestive" and the identification itself was unreliable. *Sexton v. Beaudreaux*, 585 U.S. 961, 965–66 (2018) (quotations omitted). To assess an identification's reliability, we consider factors such as (1) the witness's opportunity to view the suspect during the crime, (2) their degree of attention, (3) the accuracy of their prior description of the suspect, (4) their certainty during the identification, and (5) the time between the crime and the identification. *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (citing *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)).

We start by summarizing the photographic lineup procedure. Prior to interviewing the carjacking victim, an officer put together a photographic lineup that included Whited, who police had begun to investigate in relation to the crimes. To select the five other photos for the lineup, the officer first used an automated system to generate police photographs of people matching the suspected robber and carjacker's race, gender, weight, age, and hairstyle. From those automatically generated photographs, the officer picked five he felt matched Whited's profile. He used an old photograph of Whited before he got a facial tattoo so he wouldn't "taint the lineup" based on that single feature. Hearing Tr., R. 43, PageID 152. And when he administered the lineup, the officer told the carjacking victim that the person who had committed the carjacking might not be in the lineup.

Whited focuses on whether the lineup was unduly suggestive, but even if it were, he hasn't shown the resulting identification was unreliable. The victim testified that the carjacker, who wasn't wearing a mask, "got right at [his] door" and pointed a gun at him. Trial Tr. Vol. III, R.

131, PageID 2134. There were no inconsistencies in the victim's descriptions of the carjacker from before the lineup—on the phone and at the station—and after. The officer told him the carjacker might not be in the lineup, yet the victim identified Whited in around eight seconds and expressed 90% confidence in his identification. And the victim identified Whited only hours after the attempted carjacking. Under the factors outlined in *Manson*, the victim's identification was reliable, so admitting it didn't violate Whited's due process rights.

## IV.    Motion to Sever

Whited challenges the district court's refusal to sever his carjacking counts from the rest of the indictment. Ordinarily, we'd review a district court's denial of a motion to sever for abuse of discretion. *See United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002). But Whited didn't renew his motion at the close of evidence, so we review for plain error. *Sherrill*, 972 F.3d at 762–63.[3] To establish a plain error, Whited must show "(1) error; (2) that was plain; (3) that affected a substantial right and that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 762 (quoting *United States v. Fields*, 763 F.3d 443, 456 (6th Cir. 2014)). He has not done so.

Federal Rules of Criminal Procedure 8 and 14 govern this dispute. Rule 8(a) allows for joinder of offenses that "are of the same or similar character," "are based on the same act or transaction," or "are connected" by "a common scheme or plan." Fed. R. Crim. P. 8(a). On the other hand, Rule 14(a) grants the district court discretion to sever counts for separate trials if their joinder, though proper under Rule 8(a), "appears to prejudice a defendant or the government." Fed.

---

[3] Some of our precedents have declined to review severance when a defendant didn't renew their motion to sever at the close of evidence. *See Sherill*, 972 F.3d at 762 (collecting cases). In other cases, "we have reviewed the issue for plain error." *Id.* Here, "because the government does not argue that we should decline to address [Whited's] severance arguments altogether," we review for plain error. *Id.*

R. Crim. P. 14(a). A defendant is entitled to severance only if they show "compelling, specific, and actual prejudice." *Thomas v. United States*, 849 F.3d 669, 675 (6th Cir. 2017). Whited doesn't argue that joinder was improper under Rule 8(a), so we focus on his Rule 14(a) argument.

Whited hasn't shown the joinder caused him "compelling, specific, and actual prejudice." *Id. First*, he argues the district court should have severed his carjacking counts because they were the only charges for which an eyewitness positively identified him. According to Whited, the jury would naturally infer "that because [he] was positively identified as the carjacker, he was the perpetrator of the other robberies where there wasn't a positive identification." Appellant's Br. at 53. But three eyewitnesses to the robberies also identified Whited at trial. And the district court also gave a limiting instruction, directing the jury to "separately consider the evidence that relates to each charge." Trial Tr. Vol. IV, R. 132, PageID 2315; *United States v. Cody*, 498 F.3d 582, 587–88 (6th Cir. 2007). The jury apparently did so, convicting Whited of some offenses but acquitting him of a robbery count and two firearms counts. In short, Whited's concerns about the carjacking charge's "spillover" effects do not amount to specific and actual prejudice. *Thomas*, 849 F.3d at 676; *see also Cody*, 498 F.3d at 588.

*Second*, Whited argues the district court's denial of his motion to sever "deprived [him] of the opportunity to present a complete defense," but again, he hasn't shown prejudice. Appellant's Br. at 53. Defendants can demonstrate a need to sever by "convincing[ly] showing" they have (1) important testimony to offer on one count, and (2) a strong need to refrain from testifying on another count. *United States v. Bowker*, 372 F.3d 365, 385 (6th Cir. 2004). Whited claims he would've testified that he didn't steal the Honda sedan, but simply traded drugs with its driver in exchange for using it. Even if that would have constituted "important testimony" on the carjacking count, Whited doesn't articulate a strong need to refrain from testifying on the robbery counts. He

states only that "he wished to invoke his Fifth Amendment privilege," without further explanation. Appellant's Br. at 53. But Whited cites no caselaw suggesting that, on its own, seeking to selectively invoke the Fifth Amendment constitutes a strong need not to testify. Indeed, if it were, any defendant could sever their case at will. *Cf. United States v. Fenton*, 367 F.3d 14, 23 (1st Cir. 2004). Given Whited's "non-specific assertion[] of prejudice," the district court didn't plainly err by denying his motion. *Bowker*, 372 F.3d at 385.

## CONCLUSION

For the reasons explained above, we affirm the district court's evidentiary rulings, its denial of Whited's motion to sever, and its denial of his Rule 29 motion for judgment of acquittal.